## HAHN v. SLEEPY EYE MILLING CO. et al

Rev. Code Civ. Proc. § 737, giving a paramount lien to threshers if filed within ten days after threshing, is valid, and not unconstitutional as depriving a buyer of the grain of property without due process of law.

Rev. Code Civ. Proc. § 737, giving a paramount lien to threshers if filed within ten days after threshing, is not unconstitutional as impairing the right to contract with reference to a legitimate subject.

Defendant, having had actual knowledge that grain of an embarrassed debtor had been recently threshed by some one, was charged with knowledge of Rev. Code Civ. Proc. § 737, giving the thresher a lien superior to mortgages to pay which it applied all the proceeds of the grain delivered at its elevator; innocence of a purchaser being no defense to the lien if it is filed within the time prescribed by the statute.

In a suit for the conversion of wheat upon which plaintiff had a thresher's lien, it was no defense that the bond given by plaintiff under Rev. Pol. Code, § 3145, making it unlawful for one to use a steam thresher without first giving bond to pay all damages from fire, etc., was signed by "William Hahn," while the lien was filed in the name of "W. J. Hahn," where the names were of the same person; the purpose of the bond being to indemnify property owners against loss caused by the negligent use of threshing outfits, and not to impart notice to the public that threshing had been done.

Where, in an action for converting grain upon which plaintiff had a thresher's lien defendant filed a general denial, it was not error to refuse to permit it to amend at the conclusion of the evidence, by alleging that plaintiff waived his lien by permitting the crop to be hauled from where it was grown and threshed to defendant's elevator, in the absence of a showing that defendant relied upon the alleged waiver or was misled thereby.

It was not necessary, before suing for the conversion of wheat upon which plaintiff had a lien, that he demand possession of the grain where a demand would have been wholly ineffectual.

One holding a thresher's lien on wheat could sue for its conversion, though he was not in possession when it was converted.

(Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trover and Conversion, § 139.)

In an action against several defendants for conversion, it was not error to refuse to require plaintiff to elect which act of conversion he would rely upon, since Rev. Code Civ. Proc. § 310, provides judgment may be given against one or more of several defendants, and that the court may determine the ultimate rights of the parties on each side as between themselves, and defendant, failing to show prejudice on account of the court's refusal to require the election.

(Opinion filed, July 3, 1907.)

Appeal from Circuit Court, Brookings County. Hon. GEORGE H. MARQUIS, Judge.

Action by W. J. Hahn against the Sleepy Eye Milling Company, the Wohleter Elevator Company, and others. Defendant elevator company appeals from a judgment for plaintiff. Affirmed.

*Hall, Lawrence & Roddle* and *Ira F. Blewitt,* for appellant. *J. P. Alexander,* for respondent.

FULLER, P. J. Claiming under a thresher's lien filed within the time required by statute in order to be conclusive from the date of threshing, as to purchasers before such filing is made, plaintiff brought this action against all of the defendants to recover damages for the conversion of certain grain and obtained judgment against the Wohleter Elevator Company, a corporation and the only appellant. The statute creating the lien is as follows:

"Sec. 737. Every person or persons owning and operating a threshing machine shall have a lien from the date of threshing upon all grain threshed by him with such machine for the value of the services so rendered in doing such threshing. Provided, that the provisions of this section shall not apply to the innocent purchasers of grain after the threshing unless the said lien be filed within ten days.

"Sec. 738. Said liens shall have priority over all other liens and incumbrances upon said grain if filed within twenty days from the day on which said threshing was completed." Rev. Code Civ. Proc.

Contrary to the contention of counsel for appellant, we are inclined to regard section 737, supra, as a valid enactment by which the owner and operator of a threshing machine is given a paramount lien on the grain from the date of the threshing, which precludes purchasers in the open market having no other notice than the statute imparts, provided the lien is filed within 10 days from the time the threshing is completed. It is argued that this thresher's lien law is unconstitutional, because it deprives the grain buyer of property without due process of law, and impairs the right of contract with reference to a legitimate subject, but provisions

of our statute similar upon principle have been construed to be authorized exceptions to the general rule protecting those who innocently purchase personal property without any notice of existing liens. Albright v. Smith, 3 S. D. 631, 54 N. W. 816; Sutton v. Mining Co., 15 S. D. 410, 89 N. W. 1020. Where grain had been purchased in the open market prior to the expiration of the statutory time for filing the lien and without any knowledge of plaintiff's claim for threshing or that he had threshed the grain, the North Dakota court has recently held that the grain itself was evidence it might be subject to a lien for threshing, and that there can be no innocent purchasers of grain during the 30 days allowed for filing the lien. In affirming a judgment for the conversion of grain under a state of facts almost identical with those presented by the record in this case, that court said: "The statute deprives the purchaser of nothing. He gets all that the owner has a right to sell to him. He knows as a matter of law that the owner can not lawfully sell, except subject to the lien of the thresher, if it developes that he has any. The statute is notice to the purchaser of the right to a thresher's lien on the grain up to 30 days from the threshing. McCoy v. Cook, 13 Wash. 158, 42 Pac. 546. The defendant bought the grain with notice which was as effectual as though the statement for a lien was on file. He acted at his peril, and the statute deprives him of no constitutional or vested right of property." Mitchell v. Elevator Co., 107 N. W. 1085. For rent due or to become due the statutes of some states give the landlord a lien upon all crops, attaching at the commencement of their growth, which need not be filed or recorded, and mere knowledge of the tenancy has been held sufficient notice of the lien to put a purchaser from the tenant upon inquiry and require him to answer in trover. Watt v. Scofield, 76 Ill. 261. Although the facts before us and the statute requiring the lien to be filed within 10 days scarcely call for the application of a doctrine so adverse to appellant, we cite the above as supporting authority, and quote from another case similar upon principle as follows: "The purchaser of the crop from the tenant is bound to take notice of the statutory lien of the landlord thereon for the payment of the rent due or to become due to him from his tenant, and such pur-

chaser cannot require any better title to such crop than his vendor had. The removal and sale of such crop, by such purchaser, will amount to a conversion thereof, and, in such case, the purchaser will be liable to the landlord for the value of the crop so converted to the extent of the rent due or to become due from such tenant." Kennard v. Harvey, 80 Ind. 37. Appellant had actual knowledge that the grain of an embarrassed debtor had been recently threshed by some one, and is charged with knowledge of the statute giving the thresher a lien superior to certain mortgages of which it had both actual and constructive notice, and to pay which it applied all the proceeds of the grain in question delivered at its elevator. It was therefore in possession of facts which would suggest to a prudent person the necessity of making some inquiry relative to the thresher's bill; and, having failed in this particular, it is not in the most favorable position to demand relief from the injurious operation of the statute or complain of the following entirely proper instruction of the court, to the giving of which neither objection nor exception appear upon the record: "You will see by the language of this statute that however innocent the purchaser may be, if the lien is filed within 10 days after the threshing is done, the innocence of the purchaser is of no avail or protection to him." Conformable to the doctrine recognized and applied by this court in the recent case of Johnson v. Berry, 20 S. D. 133, 104 N. W. 1114, 1 L. R. A. 1159, this action could not be maintained under any circumstances without a valid claim for threshing the grain alleged to have been converted by appellant, and it therefore becomes necessary to determine whether it was sufficiently shown that the bond required by section 3145 of the Revised Political Code had been provided and filed by respondent before the threshing was done.

As the use of a steam threshing machine in this state by any person in violation of the act requiring the bond is expressly prohibited and made a public offense, we held in the case above cited that a thresher thus in default could not enforce his contract with the owner of the grain, and was entitled to no compensation for threshing done prior to filing his bond. It is alleged in the complaint that respondent, W. J. Hahn, had complied with the statute

with reference to filing a bond, that pursuant to a contract with Louis Bebo he threshed the grain in controversy and filed a thresher's lien in the name of W. J. Hahn before the expiration of 10 days. That the thrshing was done and a lien filed within the time claimed is unquestioned, but the bond introduced in evidence and relied upon was executed by William Hahn and two sureties, and counsel for appellant maintain that such instrument is wholly insufficient to impart notice that "William Hahn" and "W. J. Hahn" are one and the same person, or that the latter executed the instrument. Upon the authority of our numerous decisions, it must be conceded that there is no presumption that W. J. Hahn is the identical person who executed the bond in the name of William Hahn, but respondent, W. J. Hahn, testified without objection that the signature "William Hahn,". attached to the bond as principal, was his signature, and that he saw W. A. Wright and M. E. Johnson sign the same as sureties.

The purpose of the instrument being to indemnify property owners against loss occasioned by the negligent use of a steam threshing outfit, and not to impart notice to the public that certain threshing had been done, there is no merit in the contention that respondent was not entitled to recover as against appellant, though charged with no notice that a bond had been filed by W. J. Hahn. As such irregularity wouuld not enable respondent to escape liability to persons injured by his negligence, the filing of the bond otherwise unobjectionable was a substantial compliance with the statute, and wholly sufficient to answer the objection of appellant. The answer consists of a general denial which appellant asked leave to amend, at the conclusion of the evidence, by alleging that respondent had waived his lien on the crop by permitting the same to be hauled from the premises upon which it was grown and threshed to appellant's elevator in the city of Elkton. This application was supported by an offer to prove that respondent was present at the threshing, and knew that the grain was being hauled to market and made no objection thereto; but, in the absence of any intimation that at the time of purchasing the grain appellant relied upon such alleged waiver or was in any manner misled thereby, it was not an abuse of discretion to deny an amendment which would so

materially change the issues presented by the pleadings under which
the trial had proceeded. It is an elementary proposition of law that
to constitute a waiver the acts or omissions made the basis thereof
must be relied upon and serve as an inducement to the doing of
something which would otherwise not have been done. There is
nothing disclosed by the proposed amendment or offer of proof
to justify the inference that appellant relied upon or was in any
manner misled by the purported conduct of respondent, and the con-
cession of all that is claimed would not be sufficient to constitute
a valid defense to the action.

With characteristic ability, counsel for appellant insist that,
in any event, a reversal must follow because no demand for the
possession of the grain nor possessory right thereto when purchased
by their client was shown, and that respondent is not entitled to
maintain this action until default exists and steps have been taken
in the manner provided by law for the enforcement of his lien.
That respondent had no lien upon or interest in the grain when sold
and the statute under which he claims is unconstitutional are some
of the defenses offered under the general denial, which, considered
with the fact that appellant was unable to account for the disposi-
tion made of such grain when received into its elevator at the time
of the purchase, make it very evident that a demand would have
been wholly ineffectual, and therefore none is required. Myrick
v. Bill, 3 Dak. 284, 17 N. W. 268; Consolidated Land & Irriga-
tion Co. v. Hawley, 7 S. D. 229, 63 N. W. 904. Whether an action
of this character for damages is maintainable by one who was
neither in possession nor entitled to possession of property when
converted is a proposition about which the courts disagree, but it
is well settled, both upon reason and authority, that a sale in dis-
regard of the rights of a lienholder to a purchaser of the whole
interest, who afterward denies such right, renders him amen-
able to an action for conversion. Cooley on Torts, 527, and cases
there collated. In this jurisdiction the receipt of mortgaged grain
by an elevator company who mixed the same with other grain and
issued its storage tickets therefor to the mortgagor, before any
default in the terms of the mortgage existed, and afterward shipped
such grain to a milling company, to whom the mortgagor deliver-

ing the grain for storage had sold the tickets, has been held to constitute conversion as against the elevator company and in favor of the mortgagee out of possession and who had never taken any steps toward the enforcement of his lien. Phillip Best Brewing Co. v. Elevator Co., 5 Dak. 62, 37 N. W. 763. In favor of a lienholder out of possession, but having a primary and paramount right to sell specific personal property in satisfaction of his claim, the territorial court must have recognized the exception to the general rule that, in order to maintain such an action, the plaintiff must have had possession or the right of possession when the property was converted. It must be conceded that in purchasing the grain of an insolvent debtor in total disregard of the lien with which it was charged appellant damaged respondent to the full extent of what he has faithfully earned by putting such grain in a marketable condition, and after its conversion no good reason can be given in support of the claim that this action for compensatory damages is not maintainable. So the purchaser of grain, raised by a tenant and subject to a landlord's lien of which the statute imparts the only notice, is liable to such landlord in an action for damages to the extent of the value of the grain purchased. Prettyman v. Unland, 77 Ill. 206; Thornton v. Strauss & Steinhardt, 79 Ala. 164; McCown v. Kitchen, 52 S. W. 801.

From a Texas case, conclusive as to the proposition under consideration, we quote at considerable length, and as follows: "After the mortgage was properly executed and recorded, the mortgagor sold and delivered the cotton to appellants. The appellees' mortgage on the cotton was not accompanied with possession, nor was possession authorized by that instrument. Under this state of facts, the proposition is urged that a mortgagee out of possession and who is not entitled to possession by virtue of the terms of his mortgage, cannot maintain an action for damages resulting from a conversion of the mortgaged property. In those jurisdictions, where it is held that the mortgagee has the legal title, there could be no question about his right to recover damages for conversion of the property covered by the mortgage. In this state the right of the mortgagee to follow the property, and foreclose his lien, in whosesoever hands it may be found,, has always been recognized.

The mortgagor's title to the property, and his present right of possession, do not warrant him in placing the property in the hands of a purchaser, so as to relieve it of the lien and claim of the mortgage. And it would seem, in reason, that when the purchaser, who knows of the right of the mortgagee, takes possession of the property, and uses it or disposes of it, or when a trespasser converts it to his own use, the mortgagee should have the right to charge the trespasser, or such pretended purchaser, with the value of the property, to an amout not exceeding his debt, or he should have the right, if he elected to pursue this remedy, to foreclose his lien against the property in the hands of such third party. In a case such as this one before us, where there is no controversy about the debt, or its amount, it ought not to be held that a third party, who has the possession of the incumbered property, can force the mortgagee, to rely upon a foreclosure of his lien; and, when such third party does not offer to redeem by paying the debt to the extent of the value of the mortgaged property, he should not be heard to complain if he is sought to be charged with the value of the property in his hands that is covered by the mortgage. The mortgagee, under such circumstances, may sue for a conversion of the mortgaged property." Fouts v. Ayers, 11 Tex. Civ. App. 338, 32 S. W. 435. The objection appears to embody the fallacious idea that between a lienor in possession and a lienor out of possession there is some substantial difference as to remedial rights, but it is not questioned that the damage sustained by converting incumbered property is the same in each instance, and upon the authority of the territorail case above cited, and what is considered to be the best reasoned decisions, we conclude that the position taken by counsel for appellant is not well founded.

Before the commencement of the trial of this action, which was against the four defendants jointly and again at the conclusion of respondent's evidence, counsel for appellant moved that plaintiff be required to determine by election which of the alleged acts of conversion he would rely upon, and the refusal of the court to grant such motion is assigned as error. The lease under which Louis Bebo occupied and cultivated the premises on which the grain was grown provided that the title and possession of all crops

should be in the landlord until divided in the manner stipulated therein, and we think the evidence sufficiently shows that the grain delivered to the elevators, other than appllant's had not been divided and the court, by instructing the jury that the lien did not attach to undivided grain practically nonsuited respondent as to all the defendants, except appellant, and to the giving of such instruction no exception was taken by either party. Section 310 of the Revised Code of Civil Procedure provides that "judgment may be given for or against one or more of several plaintiffs; or for or against one or more of several defendants; and the court may determine the ultimate rights of the parties on each side as between themselves. * * *" From Carper v. Risdon, 19 Colo. App. 530, 76 Pac. 744, we quote as follows: "The point is made that, after the court had ordered the dismissal as to Lindemann, it could not lawfully render judgment against Carper, because the complaint charged a joint conversion. For a joint trespass the liability of the trespassers is joint and several. This action might have been brought in the first instance against Carper alone; or, having been brought against both, there might at any time before judgment have been a dismissal by the plaintiff as to Lindemann, leaving the action to proceed against the other defendant, and, on principle, we confess ourselves unable to see why the court might not do what could have been done by the plaintiff, or why it is not competent to either court or jury, in an action for a trespass, to find one defendant guilty and another not guilty." The case of Weisinger v. McDonald, 81 S. W. 687, 116 Ky. 862, was an action for the joint conversion of personal property, wherein it was held that appellant had the right to dismiss as to all the defendants but one, and it seems to be well settled that where a joint liability for conversion is alleged, and the proof shows a conversion by but one of the defendants, the misjoinder is immaterial.

In view of the foregoing statutory provision, and the further fact that appellant has failed to show any prejudice on account of the court's refusal to require respondent to elect, it is needless to give the point any further consideration.

A careful examination of every assignment of error urged in the brief of counsel for appellant discloses no reversible error, and the judgment appealed from is affirmed.