## GEORGE WONSER v. WALDEN FARMERS ELEVATOR COMPANY, a Corporation.

(153 N. W. 1012.)

**Laborer's lien — default in payment — owner may take possession of property covered by.**

1. The statutes of this state authorize the owner of a farm laborer's lien, upon default in payment of the debt secured thereby, to take possession of the property covered by the lien.

**Right of possession — against one who has converted the property — action at law may be maintained.**

2. Such right of possession may be enforced by an action at law for damages against one who has converted the property covered by such lien.

**Lien — waiver — question of intent.**

3. The question of waiver is generally a question of intent.

**Property covered by lien — grain — lien not waived by party hauling to elevator.**

4. A farm laborer does not waive his right to a farm laborer's lien, where, in performance of· the work for which he was hired, he hauls and delivers at an elevator grain on which the lien is claimed.

Opinion filed July 10, 1915.

From a judgment of the District Court, Cass County; *Pollock*, J., defendant appeals.

Affirmed.

*Pollock & Pollock*, for appellant.

Plaintiff has wholly failed to comply with the statute. The lien here claimed is purely statutory. Substantial compliance with the statute is required of one claiming such a lien. Lavin v. Bradley, 1 N. D. 297, 47 N. W. 384; Moher v. Rasmusson, 12 N. D. 73, 95 N. W. 152.

To maintain an action in conversion plaintiff must have had possession of the property, or the immediate right of possession, at the time of conversion. Parker v. First Nat. Bank, 3 N. D. 87, 54 N. W. 313; Rev. Codes 1905, § 6280; Comp. Laws 1913, § 6860; Rev. Codes 1905, chap. 30, art. 5.

Such alleged lien gives no right to an action in conversion, without first having the lien itself established by suit in equity. Hahn v. Sleepy Eye Mill. Co. 21 S. D. 324, 112 N. W. 843; Evington v. Smith, 66 Ala. 398; Corbitt v. Reynolds, 68 Ala. 378; Street v. Nelson, 80 Ala. 230; Anderson v. Bowles, 44 Ark. 108; Frink v. Pratt, 26 Ill. App. 222, 130 Ill. 327, 22 N. W. 819.

The lien here claimed is insufficient, and does not conform to the statutes, in many essential requirements, and therefore gives to the claimant no right thereunder. Such a lien is not valid, unless there is strict compliance with the statute. Lavin v. Bradley, 1 N. D. 291, 47 N. W. 384; Moher v. Rasmusson, 12 N. D. 73, 95 N. W. 152.

The circumstances surrounding this case bring it within the rule of waiver, as the same is applied to chattel mortgages and other liens. The plaintiff hauled and delivered to the elevator the identical grain

upon which he claims his lien, knowing it was to be taken into the elevator and handled in the usual course of business, and without instruction to the elevator company to keep it separate from other grain, or to put it into a special bin. He knew that it was so delivered for general storage and sale. He waived his right to a lien. Richmire v. Andrews & G. Elevator Co. 11 N. D. 457, 92 N. W. 819; Best v. Muir, 8 N. D. 46, 73 Am. St. Rep. 742, 77 N. W. 95; Bidgood v. Monarch Elevator Co. 9 N. D. 627, 81 Am. St. Rep. 604, 84 N. W. 561.

*W. J. Courtney,* for respondent.

A person who performs farm labor, as defined by our statute, is entitled to a lien upon all the grain which his labor helped to produce and secure. The plaintiff made substantial compliance with the requirements of the statutes. Rev. Codes 1905, §§ 6277, 6280, Comp. Laws 1913, §§ 6857, 6860; Hahn v. Sleepy Eye Mill. Co. 21 S. D. 324, 112 N. W. 843.

CHRISTIANSON, J. Plaintiff claims to have a farm laborer's lien upon certain flax described in the complaint, and has brought this action to recover damages for the alleged conversion thereof by the defendant. The only questions presented on this appeal go to the sufficiency of the complaint and whether the evidence offered by plaintiff entitled him to recover.

The complaint is in the usual form and alleges that the plaintiff was employed by one K. W. Rickel, as a farm laborer to work during the farming season of 1913, upon a farm occupied and operated by said Rickel in Cass county, North Dakota. That plaintiff was to receive for said services the sum of $2.75 per day, and that plaintiff worked upon section 29, township 142, range 55, in Cass county thirty-five days as a farm laborer, and that said services ended on November 11, 1913, and that $64 is due plaintiff by reason of said services. That said Rickel, who occupied and farmed said premises during the season of 1913, planted, harvested, and threshed a crop of flax thereon, and that plaintiff performed labor in the harvesting and threshing of said grain during said season, and that to secure the payment of his wages he caused a farm laborer's lien to be executed in the following form:

Farm Laborer's Lien.

State of North Dakota⎰
⎱ ss.:
  County of Cass ⎰

George Wonser, being first duly sworn, deposes and says that between the 1st day of April, 1913, and the 1st day of December, 1913, he performed service in the capacity of a farm laborer for K. W. Rickel of the township of Lake, county of Cass, state of North Dakota, by virtue of a contract with the above named K. W. Rickel, by the terms of which this affiant was employed in the capacity of a farm laborer, and for his services was to receive two and 75/100s dollars per day, payable at once, and that said sum is the reasonable value of such services, and not in excess of the price usually charged for the same kind of work in said county of Cass. And that thereunder he performed services in the capacity aforesaid for the above named K. W. Rickel, which services commenced on the 21st day of September, 1913, and ended on the 27th day of October, 1913.

That the services so performed amounted in the aggregate to thirty-five (35) days, and that the reasonable value thereof is sixty-four (64) dollars, that the amount paid affiant therefor is none dollars, and that there yet remains unpaid thereon the sum of sixty-four (64) dollars.

That the above named K. W. Rickel has growing, harvested on the following described premises in the county of Cass in said state, to wit: All of section twenty-nine (29), township one hundred forty-two (142) range fifty-five (55) a crop of flax, on which affiant claims a lien for the sum of sixty-four (64) dollars.

Affiant further deposes and says that he did not without cause quit his employment before the expiration of the time for which he was employed, and that he was not discharged for cause.

(Signed)     George Wonser.

Subscribed and sworn to before me this 11th day of November, a. d. 1913.                                   W. J. Courtney
Notarial                                             Notary Public.
Seal.                            My commission expires Sep. 25, 1919.

That such lien was filed for record in the office of the register of

deeds of Cass county on November 12, 1913. That while said lien was in force and effect, and while plaintiff was entitled to immediate possession of the flax by virtue of said lien, and on or about November 15, 1913, the defendant converted said flax to its own use, and refused to deliver the same to plaintiff on demand. That defendant converted about 3,000 bushels of flax covered by said lien of the value of $2 per bushel, and that prior to the commencement of the action, plaintiff demanded immediate possession of the flax or a sufficient amount thereof to pay his claim, but that defendant refused to deliver the same or its proceeds, but unlawfully converted the same to its own use . to the plaintiff's damage in the sum of $64. The answer is a general denial. At the commencement of the trial defendant's attorney objected to the introduction of any testimony, on the grounds that plaintiff could not maintain an action in conversion, but must first bring an equitable action to foreclose the lien; and that the farm laborer's lien does not conform to the provisions of the laws of this state with reference to farm laborer's liens. The latter objection is aimed particularly at the alleged discrepancy in the lien where it is stated that the plaintiff performed thirty-five days labor at $2.75 per day, no part of which has been paid, and that there remains unpaid on the lien the sum of $64. The objection was overruled.

The testimony shows that plaintiff commenced to work for Rickel about September 7, 1913. That prior to September 21st, he worked on other lands farmed by Rickel, but that between the 21st of September and up to and including the 27th of October, the plaintiff performed in all nineteen and three-fourths days of labor in harvesting and threshing crops upon the land described in the lien, and during the balance of that time performed labor on other lands farmed by Rickel. That Rickel agreed to pay plaintiff $2.75 per day (or $3.25 per day if plaintiff remained till the work was completed), for this work. That the reasonable value of such services and the usual wage paid other laborers in that vicinity at that time for similar services was $3 per day. That defendant received in all over 2,000 bushels of the flax in question, the market value of which ranged from $1.27 at its lowest to $1.38 at its highest. The testimony further shows that the plaintiff hauled a considerable portion of the flax at the time it was threshed, and delivered the same at the elevator of the defendant elevator company. As

already stated, the services of the plaintiff ended on October 27. Immediately after the lien had been executed and filed, demand was made upon the president and general manager of the defendant for a delivery of the flax or a sufficient portion thereof or its proceeds to pay plaintiff's claim. The demand was refused,—the president and general superintendent of the defendant corporation, in reply to the demand, stated as follows: "I will not give you any of this grain, as Mr. Sherman of Tower City has made a claim for it and is now ready to put up a bond to indemnify the company and you can't get it. You may bring your action in conversion, but we will not deliver a bushel of the grain."

At the close of the case defendant moved for a directed verdict on the grounds specified in the objection to the introduction of testimony, and the additional ground that plaintiff waived his right to a lien by hauling and delivering the flax to the defendant. This motion was denied. The defendant offered no evidence, and upon plaintiff's motion verdict was directed in favor of the plaintiff for $54.31, the same being for nineteen and three-fourths days' services at $2.75 per day. Judgment was entered pursuant to the verdict, and this appeal is from the judgment.

The principal errors assigned on the appeal attack the rulings of the court in overruling the objection to the introduction of evidence at the commencement of the trial, and in denying defendant's motion for a directed verdict. Defendant asserts that these rulings are erroneous for three reasons: (1) That the plaintiff cannot maintain an action in conversion without first establishing his lien by a suit of equity; (2) that the lien is invalid; (3) that plaintiff waived his right to a lien by hauling and delivering the flax to the defendant elevator company. We will consider these propositions in the order stated.

(1) The statutory provisions in this state relative to farm laborers' liens are as follows: "Any person who performs services for another in the capacity of farm labor between the 1st day of April and the 1st day of December in any year, shall have a lien on all crops of every kind grown, raised, or harvested by the person for whom the services were performed during said time, as security for the payment of any wages due or owing to such persons for services so performed, and said lien shall have priority over all other liens, chattel mortgages, or encumbrances, excepting, however, seed grain and threshers' liens; pro-

vided, that the wages for which a lien may be obtained must be reasonable and not in excess of that which is usually charged for the same kind of work in the locality where the labor is performed; provided, further, that in case any such person without cause quits his employment before the expiration of the time for which he is employed, or if he shall be discharged for cause, then he shall not be entitled to a lien as herein provided." Comp. Laws, § 6857.

"In order to acquire a lien as specified in the preceding section, the person performing such services shall, within thirty days after the services are fully performed, file in the office of the register of deeds of the county in which any of the real estate is situated on which any crop is grown, on which a lien is claimed, an affidavit and notice, setting forth the terms of the employment, the name of the employer, the time when the services were commenced and when ended, the wages agreed upon, if any, and if not agreed upon, then the reasonable value of the same, the terms of payment, if any, and a description of the real estate on which any crop is grown, or has been grown, or harvested, on which a lien is claimed, the amount paid him, if any, and the amount remaining unpaid, and that said laborer claims a lien for the same." Comp. Laws, § 6858.

"It shall be the duty of the register of deeds to file and enter said affidavit and notice in the manner required by law for filing and entering chattel mortgages, entering employers as mortgagors and laborers as mortgagees, and he shall be entitled to a fee of 10 cents for filing the same." Comp. Laws, § 6859.

"If the person for whom such services were performed fails to pay for the same when due, or if he shall sell, conceal, or dispose of the property covered by said lien or any part thereof, *then the owner of such lien shall have the right to take full and absolute possession of all the property covered by such lien, and sell the same in the same manner and upon the notice provided by law for the foreclosure of chattel mortgages* and the cost and fees for foreclosing shall be the same." Comp. Laws, § 6860.

Section 6878, Compiled Laws, reads: "Upon default being made in the payment of a debt secured by a lien upon personal property, such lien may be foreclosed upon the notice, and in the manner provided for the foreclosure of mortgages upon personal property, *and the holder of*

*such lien shall be entitled to the possession of the property covered*
*thereby for the purpose of foreclosing the same.* The costs and fees
for such foreclosure shall be the same as are provided in § 8132. A
report of such foreclosure shall be made in the manner set forth in
§ 8128; Provided, that when the lien has not been filed in the office of
any register of deeds, then a report of such sale shall be filed in the
office of the register of deeds, of the county wherein the property is
sold. Such liens may also be foreclosed by action as provided in
chapter 29 of the Code of Civil Procedure."

It seems entirely clear that the statutes quoted entitles the owner of
a farm laborer's lien to possession of the property, when default has
been made in the payment of the debt secured by the lien. Hence, the
decision of this court in Black v. Minneapolis & N. Elevator Co. 7
N. D. 129, 73 N. W. 90, and similar decisions of other courts, have no
application. Actions for conversion of grain brought by the holders
of statutory liens have been upheld in the following cases: Mitchell v.
Monarch Elevator Co. 15 N. D. 495, 107 N. W. 1085, 11 Ann. Cas.
1001; Schlosser v. Moores, 16 N. D. 185, 112 N. W. 78; Hahn v.
Sleepy Eye Mill. Co. 21 S. D. 324, 112 N. W. 843; Nash v. Brewster,
39 Minn. 530, 2 L.R.A. 409, 41 N. W. 105.

(2) Nor do we believe that there is any merit in the contention that
the lien is invalid for failure to conform to the statutory provisions
relative to such liens. It is true as asserted by appellant's counsel, the
lien under consideration is wholly statutory, and hence can be acquired
and enforced only when there has been a substantial compliance with
the provisions of the statute by which the lien is created. An exami-
nation of the lien shows a substantial compliance with the provisions
of the statute under which it was filed. The trial court construed the
lien most strongly against the plaintiff in every instance, and permitted
plaintiff to recover only for services rendered: (1) In caring for crops
on the particular tract of land described in the lien; (2) between the
two dates stated in the lien as the time of the commencement and termi-
nation of the term of employment; (3) for the minimum amount that
could be computed as due plaintiff under the terms of employment set
forth in the lien. The discrepancies in dates and amounts could not
prejudice anyone except plaintiff himself, and did not invalidate the
lien. Freeman v. Clark, 28 N. D. 578, 149 N. W. 565; Mitchell v.

Monarch Elevator Co. 15 N. D. 495, 107 N. W. 1085, 11 Ann. Cas. 1001; 2 Cyc. 62. Respondent contends that plaintiff was entitled to a lien on the flax in question, not only for the labor performed in caring for the crops on the lands described in the lien, but for all services he rendered on other lands as a farm laborer during the time set forth in the lien. This question is not before us, and we express no opinion thereon. See, however, Beckstead v. Griffith, 11 Idaho, 738, 83 Pac. 764.

(3) Appellant next contends that plaintiff, by hauling the grain and delivering same to the defendant's elevator, waived his right to a lien. In hauling this grain plaintiff merely performed the work for which he was hired. He could not file a lien under the statute until his services had been fully performed. The question of waiver is a question of intent. Joslyn v. Smith, 2 N. D. 53, 49 N. W. 382. Can it be said that plaintiff by performing the very labor he was hired to do manifested an indisputable intent to waive the lien which the statute gave him for whatever might be due him for such services, when they had been fully performed? The answer seems obvious. See Joslyn v. Smith, supra; Gordon v. Freeman, 112 Minn. 482, 128 N. W. 834, 1118. There is no contention that defendant relied upon such alleged waiver by the plaintiff, or was in any manner misled or prejudiced thereby. On the contrary, the testimony shows that at the time the lien was filed, and when demand was made upon defendant thereunder, defendant was still in possession of the flax covered by the lien and had made no settlement with anyone therefor, although it had knowledge of the conflicting claims to the property. Hence, it is obvious that defendant was not induced to do anything to its prejudice by the acts of plaintiff alleged to constitute a waiver. And "it is an elementary proposition of law that to constitute a waiver the acts or omissions made the basis thereof must be relied upon and serve as an inducement to the doing of something which would otherwise not have been done." Hahn v. Sleepy Eye Mill. Co. 21 S. D. 329, 112 N. W. 843.

Appellant also contends that under the rule announced by this court in Richmire v. Andrews & G. Elevator Co. 11 N. D. 453, 92 N. W. 819, the lien never attached to the flax. Respondent, on the other hand, contends that the facts in this case distinguish it from those involved in the Richmire Case. Respondent's counsel further earnestly

contends that the rule announced in the Richmire Case is unsound, and that that decision should be overruled. The decision in the Richmire Case involved the construction of the statute relative to a farm laborer's lien, and held that the lien did not attach until it was filed. Respondent's counsel claims that this construction is contrary to the legislative intent, and productive of hardship and injustice. If this is correct, the legislature can readily provide adequate legislation to meet the conditions suggested by counsel. The proper remedy to obtain the relief counsel asks at the hands of this court is by legislative enactment, rather than by judicial construction.

We are satisfied, however, that the rule laid down in the Richmire Case does not preclude plaintiff's right to recover in the case at bar. This was the opinion of the learned trial judge, and we concur in the conclusion reached by him. In this connection it may be noted that the learned trial judge who presided in the case at bar also presided in the trial of the Richmire Case, and his judgment therein was affirmed by this court. In the Richmire Case the flax was sold and shipped out of the state before the lien was filed. In the case at bar the evidence shows that the defendant received the grain at its elevator, and merely issued slips showing the amount of flax in the different loads. The ships were produced and offered in evidence, and they are not storage receipts in any sense of the word; but as already stated are merely slips of paper showing the weights of the various loads delivered. The reply of the president and general manager of the defendant company at the time demand was made upon him, on or about November 15, 1913, shows clearly that at that time settlement had not been made with anyone for the flax delivered,—either by payment or otherwise. The delivery of the flax to the defendant's elevator must be deemed a bailment, and not a sale. Dammann v. Schibsby Implement Co. 30 N. D. 15, 151 N. W. 985; Gordon v. Freeman, 112 Minn. 482, 128 N. W. 834, 1118.

The undisputed testimony in the case at bar shows that the defendant was possessed of the flax at the time the lien involved in this action was filed and at the time demand was made upon defendant for a delivery of a sufficient portion of the flax or the proceeds thereof to satisfy plaintiff's claim. The plaintiff's lien attached before defendant converted the property, and deprived plaintiff of his special property there-

in. The decision of the trial court upon the issues presented in this. case meets with our entire approval.

Judgment affirmed.