This is an action to foreclose two farm laborer's liens. No question is raised as to the validity of the liens or the amount due thereon. The sole question presented for determination is whether the trial court was correct in ruling that the liens covered certain grain in storage in elevators, — grain which the plaintiff had caused to be seized upon the foreclosure of a chattel mortgage executed to it by the person against whom the liens were filed.
The material facts are not in dispute and are substantially as follows: During the farming season of 1924 one Henry Weiss produced certain crops on the E 1/2 and the NW 1/4 of section 23, township 148 and range 71, in Wells county in this state. For convenience the two tracts will, in the course of this opinion, be denominated respectively the "E 1/2" and the "NW 1/4." Said Henry Weiss was the owner of all the crops produced on the E 1/2; but was the owner of only one half of the crops produced on the NW 1/4. He was occupying the latter tract under *Page 373 
a contract of purchase on the crop share plan by the terms of which said Henry Weiss agreed to deliver to the vendor in said contract "free and clear of all expense, one half of all grain thereafter grown on said land until the full amount of the stipulated purchase price was paid." The contract further provided "that until the delivery of one half of the grain as aforesaid, during each and every year of this contract, the legal title to, and ownership of, all grain raised during each and every year shall be and remain in the (vendor) party of the first part."
The plaintiff bank held a chattel mortgage executed by said Henry Weiss upon all crops grown in 1924 on the E 1/2 and on Henry Weiss' interest in the crops grown on the NW 1/4.
Certain crops were grown on both tracts in 1924, and Wm. Weiss and Emil Weiss performed certain services as farm laborers in the production of such crops. On October 4th, 1924, each of these parties filed a farm laborer's lien statement in the office of the register of deeds of Wells county, claiming a lien upon the crops produced on said lands during 1924. The liens so filed, by their terms, covered all the grain produced during the year 1924 on both tracts of land. On October 23d 1924, the lien claimants duly assigned their liens to the plaintiff bank and the bank brought this action to foreclose the same.
It appears that before the commencement of this action, — in fact before either of the farm laborer's liens were filed, — the plaintiff instituted an action to foreclose its chattel mortgage; and in such action it caused the sheriff, under a warrant of foreclosure, to seize all grain subject to its mortgage, that is, all the grain, not covered by prior liens, grown on the E 1/2 and that portion of the grain grown on the NW 1/4 belonging to Henry Weiss. The grain so seized consisted in all of some 1017 bushels of durum wheat; 558 bushels of oats and 554 bushels of barley. This grain was all seized in the proceedings instituted by the plaintiff to foreclose its mortgage, and was placed in storage in elevators, and storage receipts were issued therefor. Some of the storage receipts were issued in the name of the bank, others in the name of the sheriff.
Upon the trial it was stipulated "that at the time of the filing of the labor liens the sheriff had seized all of the crops raised on the northeast quarter and the share of Henry Weiss raised on the northwest quarter, and that a part of such grain so seized by the sheriff of Wells county had been hauled to the elevator and storage tickets issued therefor *Page 374 
in the name of the sheriff of Wells county and the First National Bank of Fessenden, and that a part of the grain raised on the northeast quarter and the share of Henry Weiss on the northwest quarter was still on the land at the time of the filing of the labor liens, but that such grain was afterwards hauled into the elevator and storage tickets therefor were issued in the name of the sheriff of Wells county and the First National Bank of Fessenden, and that the sheriff seized such grain under a warrant of seizure issued in an action by the First National Bank to foreclose a chattel mortgage on the crops raised on the northeast quarter, and the interest of Henry Weiss in the crops raised on the northwest quarter of section twenty-three (23), township one hundred forty-eight (148), range seventy-one."
It was further stipulated that all of the grain represented by said storage tickets (tickets which were specifically identified by number, the name of the issuing elevator and the amount of grain covered thereby) was raised on the E 1/2 and "the one half share of Henry Weiss" in the NW 1/4; and further "that all such grain was in storage in the elevator at the time of the commencement of this action, in elevators in Fessenden, North Dakota. And that all of the grain represented by such storage tickets was taken by the plaintiff in an action started by this plaintiff for the foreclosure of a mortgage which it claimed to have on such grain."
It was further stipulated or admitted "that such grain is still on hand in the elevator. That all of said grain had been previously seized by the sheriff of Wells county under a warrant of foreclosure prior to the filing of the two liens, labor liens, which have been identified as plaintiff's exhibits No. 1 and No. 4." And "that defendant's exhibit `A' is the contract under which the defendant, Gottlieb Weiss, as administrator of the estate of Jacob Weiss, deceased, is claiming the title to one half of the grain raised on the northwest quarter of section twenty-three (23), township one hundred forty-eight (148), range seventy-one (71)." Also, "that the grain represented by all of the storage tickets herein described is more than sufficient to pay the labor liens involved in this action, and the thresher's lien that has been filed against such grain."
In appellant's brief it is said: "The whole issue is as to whether the labor liens attached to the grain which was stored in the elevator *Page 375 
and which had been seized by the sheriff under a warrant of foreclosure issued in another action, prior to the time the labor liens were filed in the office of the register of deeds." In other words, it is the contention of the plaintiff that the farm laborer's liens attached only to the grain on the farms at the time the liens were filed; and that such liens did not attach to any of the grain which had been seized in the action brought to foreclose plaintiff's chattel mortgage, and which had been placed in storage in elevators. In our opinion this contention is unsound.
Section 6857, Comp. Laws 1913, provides: "Any person who performs services for another in the capacity of farm laborer between the first day of April and the first day of December in any year, shall have a lien on all crops of every kind grown, raised or harvested by the person for whom the services were performed during said time as security for the payment of any wages due or owing to such person for services so performed, and said lien shall have priority over all other liens, chattel mortgages or incumbrances, excepting, however, seed grain and threshers' liens. . . ."
Section 6858, Comp. Laws 1913, provides: "In order to acquire a lien, as specified in the preceding section, the person performing such services shall within thirty days after the services are fully performed, file in the office of the register of deeds of the county in which any of the real estate is situated on which any crop is grown, on which a lien is claimed, an affidavit and notice, setting forth, etc."
While it is true that a farm laborer's lien does not attach until it is filed (Richmire v. Andrews G. Elevator Co. 11 N.D. 453, 92 N.W. 819), it is equally true that a chattel mortgage upon a growing crop, or one to be thereafter grown, is subject to the right of one who performs service as a farm laborer in the production of such crop to a farm laborer's lien thereon. The declared purpose of the statute is to secure to a laborer who performs services in the production of a crop a lien thereon, prior to all existing chattel mortgages, "as security for the payment of any wages due or owing to such person for services so performed." And the lien may be filed only "after the services are fully performed." If the contention of appellant is correct a farm laborer might comply literally with the farm laborer's lien statute, and yet, if the holder of a chattel mortgage on the crop took possession *Page 376 
thereof before the laborer's lien was filed, such chattel mortgage would become a lien prior to the laborer's lien; and all the grain might be appropriated in satisfaction of the mortgage, leaving the farm laborer wholly without security. Thus, a farm laborer, whose term of service ends November 1st, might find that holders of chattel mortgages had foreclosed their mortgages and taken all the crops into their possession before his term of service ended. The lawmakers had no intention that the farm laborer's lien should rest upon such insecure foundation. On the contrary, they indicated in the plainest possible terms their intention that a farm laborer upon compliance with the statute should be granted a lien on the grain prior to all chattel mortgages.
The grain in controversy here has not been sold; nor has anyone acquired a lien thereon subsequent to the time the right to file a farm laborer's lien accrued. The grain is in existence. It is in the constructive possession of the holders of the storage tickets. Dammann v. Schibsby Implement Co. 30 N.D. 15, 151 N.W. 985; Gordon v. Freeman, 112 Minn. 482, 128 N.W. 834, 1118. And we are wholly agreed that as against plaintiff's chattel mortgage and all rights arising thereunder the farm laborer's liens attached to such grain; and such liens are prior to the lien of the mortgage.
Appellant in his brief and on the oral argument, cited and relied upon Richmire v. Andrews G. Elevator Co. supra, and Wonser v. Walden Farmers Elevator Co. 31 N.D. 382, 153 N.W. 1012. In our opinion these cases lend no support to appellant's contention.
The judgment appealed from is affirmed.
JOHNSON, BIRDZELL, NUESSLE, and BURKE, JJ., concur.