HONSTEIN TRUCKING, A PARTNERSHIP CONSISTING OF STEVEN E. HONSTEIN AND HARRY HONSTEIN, APPELLEE AND CROSS-APPELLANT V. SANDHILLS BEEF, INC., A CORPORATION, APPELLANT AND CROSS-APPELLEE.

308 N.W.2d 331

Filed July 10, 1981. No. 43456.

Van Steenberg, Brower, Chaloupka, Mullin & Holyoke for appellant.

Winner, Nichols, Meister & Douglas for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ.

WHITE, J.

Appellant, Sandhills Beef, Inc., appeals from an order of the District Court for Scotts Bluff County, Nebraska, ordering it to deliver to appellee, Honstein Trucking, 4,477.92 cwt. of corn or, in the alternative, to pay appellee the value of such corn, which the court found to be $17,240. Appellee, a commercial combiner of grain, sued the appellant, a corporation that engages in extensive cattle feeding operations, in replevin to recover 10,956.52 bushels of corn against which the appellee claimed a thresher's lien under the terms of Neb. Rev. Stat. §§ 52-501 to 52-503 (Reissue 1978). The District Court found that the lien was timely filed and notice given; that the corn combined and delivered by appellee to appellant was commingled with other corn in appellant's feedlot and that appellant had on hand

at all times pertinent more than 10,956.52 bushels of corn; and that appellee has a valid lien on 4,477.92 cwt. of corn and is entitled to delivery of that amount of corn or its monetary value of $17,240.

Appellant appeals, assigning as error that the District Court erred (1) in finding that replevin was a proper remedy under §§ 52-501 et seq.; (2) in finding that the lien attached to the corn in the appellant's hands when the notice of lien was both filed with the county clerk and served on the appellant after the sale and delivery of the corn; (3) in failing to find that delivery of the corn to the appellant shifted the claimed lien from the corn to any purchase price remaining in the appellant's hands; (4) in finding that the specific corn was commingled and that the lien attached to other than the specific corn; and (5) in failing to find that the claimed lien expired when the specific corn was consumed by livestock prior to delivery of notice of lien to appellant. Appellee cross-appeals, assigning as error the District Court's calculations as to the amount of the lien. We affirm the District Court's findings and judgment in all respects.

The case arose when one Chuck Meyer entered into a contract with the appellee to combine 1,260 acres of corn at $20 per acre. Part of the corn was to have been stored at Meyer's farm and the remainder was to be hauled to market. Ultimately, all of the corn was sold instead to the appellant for delivery to the appellant's feedlot. The combining of the corn started in mid-November 1979 and finished on December 8, 1979. Before the appellee began delivery to the appellant, Meyer received from the appellant the sum of $100,000. The value of the corn at the time of the delivery was $4.10 per hundredweight. A total of 1,145 tons of corn were delivered. On January 4, 1980, less than 30 days from the date that the combining was completed, the appellee filed with the county clerk of Scotts Bluff County notice of a thresher's lien pursuant to § 52-501, and the notice was mailed to the appellant by U.S. mail

on January 8, 1980. This notice, received by the appellant on January 9, 1980, was the only notice, oral or written, given to the appellant of a claimed thresher's lien. However, appellant's manager admitted that by mid-November 1979 he knew appellee was doing the combining for Meyer. The corn when delivered to appellant was either piled in an open silage pit or immediately processed and fed to the appellant's cattle. The appellant was receiving other corn during the time that the appellee was delivering Meyer's corn, the corn was substantially commingled, and at all times there were at least 10,195 bushels of corn in the silage pit. Appellee received $5,000 in partial payment from Meyer, but a dispute arose between Meyer and the appellant as to a balance due Meyer from appellant. Any balance due and owing Meyer from the appellant has not been paid and is the subject of litigation between those parties.

Section 52-501 essentially provides that the owner of a combine used in combining grain shall have a lien upon such grain or corn which he shall combine for either the agreed amount or the reasonable value of the combining services; and to perfect said lien he shall file in the office of the county clerk of the county where the combining was done a notice of the lien, which notice shall designate (1) the name of the person for whom the combining was done; (2) the amount due for the services; (3) the amount covered by the lien; (4) the place where the grain or corn is located; and (5) the date on which the combining was done. The notice shall be filed within 30 days after the combining is done. In the event the grain is to be sold, it is the duty of the seller to notify the purchaser that the combining bill has not been paid. The statute then provides that in the event the corn is sold or consigned with the consent or knowledge of the party entitled to a lien thereon within 30 days after the date of such combining, the lien shall not attach to the grain or to the purchase price thereof unless the party entitled to the lien shall notify the purchaser in writing of the lien. The statute further provides that the lien may be

foreclosed in the manner and form provided for the foreclosure of secured transactions as provided in Neb. U.C.C. art. 9 (Reissue 1971), and that said foreclosure shall be instituted within 30 days after the filing of the lien. Section 52-502 provides, in effect, that the lien shall not attach to the corn in the hands of an innocent purchaser unless all the notices provided for in § 52-501 shall have been given. It is essentially the position of the appellant that the lien is not effective as against it because it was an innocent purchaser for value, which took delivery and paid for the grain without notice of any lien, and that the lien is not retroactive to the date on which the threshing was commenced. It is clear from the record, and not disputed by the parties, that the appellee's lien was filed with the county clerk and notice given to the appellant by the appellee within 30 days after the completion of the combining of Meyer's corn, although, admittedly, subsequent to the purchase of and payment for the grain by the appellant. Further, it is clear that by mid-November appellant's manager knew appellee was combining the corn for Meyer. Although there are no cases in Nebraska interpreting the lien statute to guide the court, the exact situation has been presented to other courts under statutes substantially similar to that in Nebraska. In *Mitchell v. Elevator Co.*, 15 N.D. 495, 107 N.W. 1085 (1906), an action was brought to recover damages against the defendant elevator for the conversion of grain on which the plaintiff claimed a thresher's lien. The defense was that since the lien was not on file at the time the grain was purchased, although the purchase was made within 30 days of the time of the threshing, the defendant was an innocent purchaser. Section 4824, R.C.C. (1899), the North Dakota statute then in effect, provided: "Any person entitled to a lien under this chapter, shall within thirty days after the threshing is completed, file * * * a statement in writing * * * showing the amount and quantity of grain threshed * * * and a description of the land upon which the grain was grown." Section 4825 provided:

"Such lien shall have priority over all other liens and incumbrances upon such grain." The court, in a holding for the plaintiff, said: "To construe this statute so that purchasers of the grain during the 30 days could purchase it without liability, would defeat the purpose of it to a great extent. The intention of the legislature clearly was to subject the grain to a lien for the threshing during the 30 days and this lien became enforceable upon the filing of the claim during the 30 days . . . . After the filing of claim for a lien, the lien exists as a matter of law against all liens or claims. The statute deprives the purchaser of nothing. He gets all that the owner had a right to sell to him. He knows as a matter of law that the owner cannot lawfully sell, except subject to the lien of the thresher, if it develops that he has any. The statute is notice to the purchaser of the right to a thresher's lien on the grain, up to 30 days from the threshing. . . . The defendant bought the grain with notice which was as effectual as though the statement for a lien was on file. He acted at his peril, and the statute deprives him of no constitutional or vested right of property." *Mitchell v. Elevator Co., supra* at 500-01, 107 N.W. at 1086-87. *Hahn v. Sleepy Eye Milling Co. et al.*, 21 S.D. 324, 112 N.W. 843 (1907); *Blank v. Fenton*, 54 N.D. 837, 211 N.W. 590 (1926). See, also, generally, 3 Am. Jur. 2d *Agriculture* § 14 (1962); 3 C.J.S. *Agriculture* § 122 (1973).

The sole and only purpose of the thresher's lien law was to give notice by statute to all prospective purchasers of grain and to the owners thereof within 30 days after the completion of combining of the possible existence of a lien by the person who combined the grain. The appellee did not waive that right by delivering the grain nor did he violate any rights of the appellant by failing to inform it at the time of delivery. Appellant's assignment manager knew at the time of delivery that the corn was being combined by appellee for Meyer. In addition, appellant was engaged in a business which involved purchasing large quantities of grain, some of it harvested by custom combiners.

Having been in such a business for years, appellant hardly fits the image of an innocent purchaser, unaware of the thresher's lien statute and the attendant business risks. The assignment is without merit.

Appellant next argues that the District Court erred in failing to find that delivery of the corn to appellant shifted the claimed lien from the corn to any purchase price then remaining in the hands of the appellant. However, in the present case, appellant claims that it paid Meyer $100,000 for the corn in advance of the combining. Whether there is any purchase price remaining in the hands of the appellant is the subject of a pending lawsuit between appellant and Meyer. To construe the statute as appellant wishes would force appellee to await the outcome of that lawsuit and, thus, defeat the entire purpose of the thresher's lien statute. The purpose of the lien is to protect the right to payment of the combiner who is not a party to the payment arrangements between the seller of the grain and the purchaser. Allowing the purchaser to escape the effect of the statute merely by paying the seller in advance would remove the protection now granted the combiner by the statute. This court has previously held that the mechanic's lien law, Neb. Rev. Stat. § 52-101 et seq. (Reissue 1978), is remedial in nature and requires a liberal construction. *Peters v. Halligan*, 182 Neb. 51, 152 N.W.2d 103 (1967). The same principle of construction applies to the thresher's lien. Thus, the trial court was correct in finding that the lien here attached to the corn, and this assignment of error is without merit.

Appellant also raises the issue of whether replevin is an appropriate remedy for the enforcement of a thresher's lien under § 52-501. Section 52-501 gives to the holder of a thresher's lien the rights of enforcement given to owners of secured interests in property as outlined in Neb. U.C.C. art. 9 (Reissue 1971). Section 9-503 states as follows: "Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done

without breach of the peace or may proceed by action." Under the plain terms of article 9, the action in replevin, which is essentially to regain possession of goods, is provided for and plainly granted to the appellee. The assignment of error is without merit.

Appellant's final assignment of error suggests that the corn delivered to it was, in fact, destroyed by being fed to the appellant's cattle prior to the time the lien was filed and, therefore, the lien did not attach. The evidence indicates that the corn delivered to the appellant was commingled with other corn and that at all times there was on hand in the silage pit where the grain was stored a sufficient quantity of corn to respond to the judgment of the court. Generally, where one commingles property subject to a lien with other property alike in quality and value, the lien is not extinguished so long as there is on hand sufficient property alike in quality and value to satisfy the lien. See *First Nat. Bank v. Morgan,* 172 Neb. 849, 112 N.W.2d 26 (1961). See, also, generally, 66 Am. Jur. 2d *Replevin* § 8 (1973); 77 C.J.S. *Replevin* § 13 (1952). This assignment of error is without merit.

On cross-appeal, the appellee assigns as error that the trial court failed to allow the full recovery of which it claims to be $20,200, contending that the contract was an indivisible contract to combine Meyer's corn for $25,200, rather than a contract to combine 1,260 acres at $20 per acre. In this factual question, there was evidence which would support the trial court's findings that appellee actually combined only 1,112 acres and that the contract was divisible. In a bench trial in a law action, the findings of fact by the trial court have the force and effect of a jury verdict and will not be set aside unless clearly wrong. *Lee v. City of Omaha, ante* p. 345, 307 N.W.2d 800 (1981). Here, the findings of the trial court are supported by the evidence and, thus, the assignments of error are without merit.

The judgment of the trial court is affirmed.

AFFIRMED.