The petition for rehearing is therefore denied.

---

## ST. ANTHONY & DAKOTA ELEVATOR COMPANY, a Corporation, v. ISIDOR DAWSON and John H. Byfield, Copartners as Dawson & Byfield.

(126 N. W. 1013.)

**Personal Property — Sales — Implied Warranties.**

1. On a sale of personal property by the owner, there is an implied warranty of title free from incumbrance.

**Sales — Constructive Possession — Effect as to Implied Warranties.**

2. There may be an implied warranty of title of personal property on a sale thereof, although only in the constructive possession of the seller as bailor.

Note.—The courts unanimously hold that the warranty of title which is im-

**Warehouse Receipts — Effect of Assignment — Transfer of Title.**

3. An indorsement in blank followed by an unconditional delivery by the holder of a warehouse receipt for grain stored in a public elevator, to a creditor for a valuable consideration, passes the title to the grain represented by the ticket, and is a transfer of the title and a sale of the grain to such creditor.

**Warehousemen — Delivery of Ticket to Elevator Company — Sales.**

4. Where such creditor as holder of such storage ticket therefore delivers the same to the elevator company and receives the money due thereon, a sale of the grain is thereby made.

**Sales — Payment of Encumbrances by Purchaser — Damages.**

5. A person who sells personal property on which there is a valid mortgage, and the purchaser is compelled to pay said mortgage after an adjudication of its validity, is liable to such purchaser for the amount of the mortgage and costs.

**Sales — Defense of Title to Property Warranted — Damages — Attorney's Fees — Demand upon Warrantor to Defend.**

6. If such purchaser, when sued for conversion in disposing of the property on which the mortgage was, requests the seller to defend the action, and he does not, the purchaser is entitled to recover, in addition to the amount of the mortgage and costs, special damages for a reasonable attorney's fee when pleaded and proven.

Opinion filed March 8, 1910.    Rehearing denied June 10, 1910.

Appeal from District Court, Cavalier county, *Kneeshaw,* J.

Action by St. Anthony & Dakota Elevator Company against Dawson & Byfield.    Judgment for defendant, and plaintiff appeals.

Reversed.

*Guy C. H. Corliss,* for appellant.

Where a warrantor of title is notified to defend a suit for the breach of such title and fails to defend, the recovery in such suit fixes the damage.    24 Am. & Eng. Enc. Law, pp. 740–742; 2 Black, Judgm. §§ 572, 574; 22 Cyc. Law & Proc. p. 106; First Nat. Bank v. First Nat. Bank, 68 Ohio St. 43, 67 N. E. 92.

*Cleary & McLean* and *Jeff M. Myers,* for respondent.

Transfer of storage tickets transfers the grain stored.    Best v. Muir, 8 N. D. 44, 73 Am. St. Rep. 742, 77 N. W. 95.

MORGAN, Ch. J.    This is an action for damages based upon a breach

plied on a sale of personalty protects against outstanding liens and encumbrances, as shown by a review of the authorities in a note in 16 L.R.A. (N.S.) 410.

For a discussion of the general subject of warranty implied on sale of chattels, see note in 62 Am. Dec. 460.

of an implied warranty of title on an alleged sale of wheat to the plaintiff by the defendants. The complaint alleges that the defendants sold the wheat to the plaintiff, and that the same was encumbered by the lien of a chattel mortgage which the plaintiff was compelled to pay to the owner thereof, the Robertson Lumber Company. The answer denies that the defendants sold such wheat to the plaintiff, and further alleges that the same was sold to the plaintiff by the owner thereof, through the defendants as his agents. The action was tried to the court, a jury having been waived. Findings of fact and conclusions of law in favor of the defendants were made, and, pursuant thereto, the action dismissed. The plaintiff appeals from the judgment entered on such findings, and alleges that the findings of fact are not sustained by the evidence, and that the conclusions of law are not warranted by the facts.

In substance, the facts are as follows: One H. J. Spenst was the grower and owner of the wheat in controversy. In 1906 he mortgaged it as a growing crop to the Robertson Lumber Company to secure an indebtedness from him to such company. This mortgage was duly filed in the office of the register of deeds. After the filing of said mortgage, Spenst executed and delivered to the defendants two mortgages upon the same crop. In October of said year, one of the defendants, on behalf of his firm, interviewed Spenst in regard to the payment of the mortgages due said firm, and had in his possession at that time replevin papers for the purpose of taking possession of the mortgaged property. Spenst was not willing to have the property taken, and possession thereof was not taken under the replevin papers, but an arrangement was entered into between Dawson, representing his firm, and Spenst, whereby Spenst was to pay to the defendants the sum of $500 at once, and the defendants agreed to extend the payment of the balance for one year upon the payment of said sum. At said interview, it was agreed that the wheat should at once be hauled to market, and Spenst caused the same to be done soon thereafter; the last load having been delivered at the plaintiff's elevator on the 12th day of October, 1906. On the evening of that day, Spenst and the defendant Byfield met at the elevator, and storage tickets were issued by the plaintiff's agent to Spenst for all the wheat that he had delivered up to that time, amounting to 882 bushels. The storage

tickets were delivered by the agent to Spenst at that time, and the same were immediately indorsed by him in blank, and, after such indorsement, he delivered same to Byfield with instructions to "go and get your money." There was nothing said in regard to the market price of the wheat at that time, but the number of bushels, grade, and dockage were figured up. Spenst and Byfield then left the elevator, and went to the office of the defendants. At the office a new arrangement was entered into between them. It provided that Spenst should pay the sum of $31 in addition to what the storage tickets represented, and he was to return to the defendants a span of horses which he had purchased from them. The defendants were to receive $557 under his new contract, and the return of the horses, and upon the payment of the $31 and the return of the horses the indebtedness was to be canceled. On the following day defendants surrendered the storage tickets at the elevator office, and a cash ticket was issued to them in lieu thereof, and, upon the surrender of the cash ticket, the plaintiff paid them the full amount called for by them, being $526.25.

It is somewhat uncertain whether anything was said at the elevator on the 12th as to what the price of the wheat was at that time. From matters that transpired afterwards between Spenst and the defendants, it appears that they considered the value of such storage tickets to be $526.25. We do not deem this to be of any materiality in view of what happened thereafter in reference to the conditions under which possession was afterwards unconditionally given to the defendants of the storage tickets. The controverted question in this case is whether the storage tickets were absolutely and unconditionally turned over to the defendants to become their property, or whether the same were turned over to them as Spenst's agents, under which he was to receive the money represented thereby, to be applied on the indebtedness. On his cross-examination, Byfield states that these tickets were turned over to him as his property, but he afterwards, to some extent, qualifies that statement. On the back of the storage tickets is found a certain memorandum, which is in these words:

Date sold, Oct. 13, 1906.
66 30/60 bu. Price 64½c. Amount, $42.85. Less storage and insurance, collected,........Net proceeds, $42.85.

Received from the St. Anthony & Dakota Elevator Co. forty-two and 85/100 dollars ($42.85) in full payment for this ticket.

[Signed] H. J. Spenst, Grower.

The indorsement on the back of the other storage ticket was precisely the same, except as to the number of bushels and price. On the 13th of October the following cash ticket was issued by the plaintiff's agent, and delivered to the defendants:

Dresden, N. Dak. Station, Oct. 13, 1906.
No. 341.

Bought of H. Spenst, 822 20/60 bu. No. 1 (grade) at 64½c. pr bu., $530.40. Less storage,........Net value, $530.40.

The St. Anthony & Dak. Elevator Co.
By A. J. Foss, (Agt.)
Received payment.
H. Spense,
By J. H. Byfield.

Upon the surrender of this cash ticket the elevator agent paid the defendants the sum of $526.25.

These facts are practically all conceded to be true, and the appellant in his brief concedes them to be true for the purpose of his contentions, and therefrom argues that the conclusions of law are not warranted by the facts. Under such circumstances, we are to consider the facts as to their sufficiency to warrant a dismissal of the action as a matter of law. It is conceded that, when the elevator tickets were turned over to Byfield at the elevator office, the defendants were entitled to receive only $500 out of the proceeds thereof. Under the subsequent arrangements, they became entitled to all the proceeds of said tickets. Under these facts, what conclusions can properly be drawn as to whether the wheat was sold to the plaintiff by Spenst or by the defendants? Inasmuch as the facts are conceded, the findings of the trial court are not entitled to the usual presumption in their favor. The question presented to us is whether the conclusions of law are warranted by the facts or not. The respondent contends that the storage tickets, cash ticket, and the indorsements there-

on conclusively show that the defendants did not buy the wheat from Spenst nor sell it to the plaintiff. Standing alone and unexplained, this contention would have force. The question of the manner of doing business at this elevator in respect to storage tickets was proven in this case, and therefrom it appears that it was a uniform and general custom that the grower's name, if he delivers the grain at the elevator, is always used in receipting for the money, although the ticket may have been sold by him and be presented at the elevator by the purchaser as its owner. This evidence as to custom or general usage was not objected to, and is therefore not denied, and must be taken as true in this case. Whatever force would have to be given to these indorsements standing alone or unexplained cannot be given to them in view of such evidence. The indorsements, therefore, have no force as evidence that the defendants acted as Spenst's agents in this transaction. The question before us is what was the legal effect of the indorsements of the storage tickets in blank by Spenst, in connection with his action in subsequently agreeing that the defendants were absolutely and unconditionally entitled to them and their entire proceeds. Under this new arrangement, Spenst relinquished all claim to the tickets, and the defendants thereafter had absolute control thereof. The delivery of the wheat by Spenst to the elevator company was a bailment. The title did not vest in the elevator company by such delivery. The title remained in Spenst. Under the terms of storage tickets, Spenst had the right to demand possession of such wheat, and the elevator company would be compelled to turn the same over to him, if in its possession and the same could be done, and, if the same was not in its possession, and the identical wheat could not be delivered, it was compelled to deliver to Spenst an equal number of bushels of wheat of like grade. These matters are elementary, and no authorities need be cited in support of them.

It is also beyond controversy that the assignment and delivery of storage tickets unconditionally passes the title to the property and to the storage tickets to the person to whom they are delivered. This is a statutory provision in our state. Rev. Codes 1905, § 2266. It is therefore beyond dispute that the defendants became the absolute owners of the storage tickets and of the wheat represented thereby under the new arrangements made on October 12th. By presenting such

storage tickets to the elevator company and receiving the money due thereon a sale of the wheat was made by the defendants. By turning over the tickets to the elevator company and receiving the money thereunder, the elevator company ceased to be bailee and became the owner of the wheat. It is clear to us that no other effect can be given to the transaction than to hold that a sale was made by the defendants. In legal effect the facts are the same as though they had delivered the wheat at the elevator themselves and received the money therefor. In that case no question could be raised as to their having sold the wheat.

It is contended, however, that in any event there was no sale by the defendants from which an implied warranty would follow, inasmuch as there was no express claim of ownership, and possession of the wheat was not in the defendants when it was sold to the plaintiff. We think that the defendants were in the constructive possession of the wheat after the storage tickets were turned over to them, and this is sufficient to sustain a sale with implied warranty of title that it is free from encumbrance. The statute provides that an implied warranty arises when a person sells personal property as his own, and it is claimed that defendants did not sell this wheat as their own. What we have already stated disposes of this contention. We have held that the sale was not made by them as agents of Spenst, which is the same as holding that the sale was made as their own property.

In this case special damages were pleaded, and evidence as to such damages was received. The special damages pleaded and proven are attorney's fees necessarily paid out by the plaintiff in defending the action brought against it by the Robertson Lumber Company. After that suit was begun, the plaintiff herein demanded that the defendants defend that action. They did not comply with this demand, and plaintiff defended it, although unsuccessfully. Evidence as to the reasonableness of the attorney's fee in that case was submitted on this trial, and the trial court found that the sum of $150 was a reasonable attorney's fee in that action. The appellant insists in this court that said sum shall be allowed to it as damages. The respondent does not resist it in the brief, and does not consent to it. It is left entirely without argument, and no authorities are cited by either party as to the allowance of such disbursements as special damages.

We are satisfied, on principle, that the amount should be allowed in this case. The defendants having refused to defend the action, the plaintiff might jeopardize its right to recover what it paid, if it paid the amount of the mortgage or did not defend the action. If the Robertson Lumber Company mortgage was invalid for any reason, or there was any defense to it, and it had been paid by the plaintiff, no recovery could be had against the defendants on account of such payment. It was therefore a safe and business-like precaution for the plaintiff to defend said action and secure an adjudication as to the validity of the alleged prior mortgage.

We think, also, that such attorney's fees are allowable as special damages, under the provisions of § 6574, Rev. Codes 1905, when pleaded and proven. Whether that section is applicable or not is not material, as such attorney's fees may be recovered as special damages under the ordinary rule of law that full compensation is recoverable in such cases. Whereas the authorities are not in harmony upon this question, the great weight thereof is in favor of the allowance of such attorney's fees in cases where the covenantor is requested to defend the suit when brought. The authorities on this question are collected in 11 Cyc. Law & Proc. p. 1167. See also 8 Am. & Eng. Enc. Law, 2d ed. p. 190. In Seitz v. People's Sav. Bank, 140 Mich. 106, 103 N. W. 545, where a similar question was considered as upon the breach of covenants pertaining to real estate titles, the court said: "The cases are not agreed, but the better rule in our opinion, and the one sustained by the weight of authority, is that the expenses of the defense of title, including attorney's fees, are recoverable."

For these reasons, the appellant is entitled to recover from the defendants the amount of the judgment recovered against it by the Robertson Lumber Company, with the costs of that suit and interest, together with the sum of $150 as attorney's fees, with interest thereon from the date of said judgment.

The judgment is reversed.     All concur.