## JOHN DAMMANN, Sr., v. SCHIBSBY IMPLEMENT COMPANY, a Corporation.

### (151 N. W. 985.)

**Evidence — conversion — findings — property — right of possession.**

> 1. Evidence examined and found to support the finding that plaintiff was entitled to the immediate possession of the grain in question at the time of the alleged conversion.

**Grain — warehouse receipt for — indorsement and delivery of — passes title to grain — trial court — findings of.**

> 2. Following St. Anthony & D. Elevator Co. v. Dawson, 20 N. D. 18, held, that the indorsement and delivery of a warehouse receipt for grain pass title to the grain, and that the findings of the trial court that the defendant had converted the flax in controversy is amply supported by the evidence.

Opinion filed January 29, 1915. Rehearing denied March 13, 1915.

Appeal from the District Court of Bottineau County, *Burr*, J.
Affirmed.

*Blaisdell, Murphy, & Blaisdell* and *Morton & Mohr,* for appellant.

If the owner expressly or impliedly assents to the taking, use, or disposition of his property, he cannot recover for the conversion thereof. 38 Cyc. 2009, and cases cited.

And this is true even where the person authorized to dispose of property exceeds his authority.   38 Cyc. 2110, and cases cited.

The holder of a general storage ticket is never chargeable with constructive possession of any specific grain.   Best v. Muir, 8 N. D. 44, 73 Am. St. Rep. 742, 77 N. W. 95; Best v. Barrett, 8 N. D. 49, 77 N. W. 1117; Plano Mfg. Co. v. Jones, 8 N. D. 315, 79 N. W. 338.

The decision of our supreme court in St. Anthony & D. Elevator Co. v. Dawson, 20 N. D. 18, 126 N. W. 1013, Ann. Cas. 1912B, 1337, rests upon a statutory provision.   Rev. Codes 1905, § 2266.

The above section is a part of article 47 of the Political Code.   This act expressly excepts from its provisions grain in bulk.   Sections 2241 and 2261 of article 46 of the Political Code control in all matters pertaining to warehouses or grain in bulk.   This distinction between these two statutes has been recognized by this court.   State ex rel. Hart-Parr Co. v. Robb-Lawrence Co. 17 N. D. 259, 16 L.R.A.·(N.S.) 227, 115 N. W. 846.

*Weeks & Moum,* for respondent.

The legal title to the grain was in the respondent.   Ownership carries with it the right of possession.   Rev. Codes 1905, § 4702.

A conversion by defendant, or by a third person prior to the conversion alleged, is no defense.   38 Cyc. 2061.

Section 2266, Revised Codes 1905, expressly provides that the title of goods and chattels stored with a public warehouseman passes by indorsement and delivery of the receipt.   St. Anthony & D. Elevator Co. v. Dawson, 20 N. D. 18, 126 N. W. 1013, Ann. Cas. 1912B, 1337.

BURKE, J.   Some time prior to the year 1910, plaintiff sold a quarter section of land to one Tarvestad and his wife upon what is known as the half-crop contract plan.   Under the terms of said contract the Tarvestads agreed to pay the sum of $4,500 principally by delivering one half of all the grain sown or grown upon said land, each and every year thereafter until the purchase price was fully paid, and it was further agreed that the Tarvestads "may deliver all the grain sown,

the same to be applied upon the balance due thereon. . . . It is further agreed and understood that until the delivery of one half of said grain as aforesaid during each and every year of this contract, the legal title to the ownership and the possession of all of said grain raised during each and every year shall be and remain in the first parties. . . ." Under this contract, the Tarvestads entered into the possession of said land, and during the year 1910 raised thereon 179 bushels of flax and 25 bushels of wheat. The flax was delivered by Mrs. Tarvestad to the elevator at Hurd on November 7th of that year. She tried to sell the same, but owing to a notice given to the elevator by defendant was unable to do so, the elevator agent, however, delivering a storage ticket for the grain in the name of Mr. Tarvestad. The defendant Schibsby claims to have taken a chattel mortgage given by the Tarvestads upon this crop for the year 1910, and it was on account of his claim that the elevator company refused to pay cash to Mrs. Tarvestad for the flax. Upon the day of the delivery, Mrs. Tarvestad went to Lansford, as she says, to deliver the storage tickets to the plaintiff, Dammann, but meeting the defendant first was persuaded to deliver said storage tickets to him after indorsing her husband's name thereon. Plaintiff brings this action in conversion. The case was tried to a jury and evidence was offered by plaintiff's son, who seems to have acted as plaintiff's agent, and by Mrs. Tarvestad. Defendant offered the evidence of Alec Schibsby, who testified to the transaction whereby he obtained the storage tickets. After such testimony, both parties rested and each side made a motion that the court direct a verdict in his favor, and thereupon the court withdrew the case from the jury and made findings of fact and conclusions of law to the effect that the plaintiff was entitled to a judgment against the defendant for the value of one half of the flax. The defendant has appealed, specifying as errors certain rulings of the trial court, which may be grouped under two headings as stated by him in his brief: "Defendant asserts that plaintiff should not prevail for the following reasons: First, because the proof shows that plaintiff was not in possession, nor had he a legal right to the immediate possession, of the grain in question at the time of the alleged conversion, and had consented to the disposal of the flax prior to that time. Second, because the proof shows that defendant was a mere general storage ticket holder, and was neither in actual

or constructive possession of the flax alleged to have been converted." In considering these two propositions, we must remember that the finding of the trial court has the force of a finding by a jury, and will not be disturbed if supported by any substantial credible testimony.

(1) Upon the first proposition, we think the briefest reference to the evidence will show that plaintiff was entitled to the immediate possession of the grain in question on the 7th day of November, 1910. His son testifies, after the introduction of the contract of sale aforesaid: "Tarvestad was in to see us and he told us that they would thresh there in a few days, and that they would then turn in all of the crop threshed during the year 1910 on this quarter." Mrs. Tarvestad testifies: "I had instructions from my husband when the grain was threshed to haul it to the elevator and turn either the money or the storage tickets over to Dammann. I hauled the crop to the elevator at Hurd, Farmers' Elevator. I tried to sell it, but it was held back; the Farmers' Elevator held it back and said it did not belong to me. The elevator said Schibsby had a mortgage on it,—that he had advised the elevator not to sell it, or buy it from me. . . . I got storage tickets from the elevator. I can't say whether they were in my name or Mr. Tarvestad's." The foregoing evidence, taken in connection with the extracts of the contract which we have given, shows that plaintiff was entitled to the immediate possession of the flax upon the day in question.

(2) Under this heading appellant insists that the plaintiff is pursuing either the wrong party or the wrong property; that he should have sued the elevator company which actually received the grain, and that storage tickets are not a subject of conversion. · Upon this question he argues that a general storage ticket holder is never chargeable with constructive possession of any grain, and cites us to Best v. Muir, 8 N. D. 44, 73 Am. St. Rep. 742, 77 N. W. 95; Plano Mfg. Co. v. Jones, 8 N. D. 315, 79 N. W. 338. However, after the two decisions mentioned, in St. Anthony & D. Elevator Co. v. Dawson, 20 N. D. 18, 126 N. W. 1013, Ann. Cas. 1912B, 1337, decided in 1910, this court held that an indorsement and delivery of the warehouse receipt for grain passed the title to the grain, the particular words being as follows: "Under the terms of storage tickets, Spenst had the right to demand possession of such wheat, and the elevator company would·be compelled

to turn the same over to him, if in its possession and the same could be done, and, if the same was not in its possession, and the identical wheat could not be delivered, it was compelled to deliver to Spenst an equal number of bushels of wheat of like grade. These matters are elementary and no authorities need be cited in support of them. It is also beyond controversy that the assignment and delivery of storage tickets unconditionally pass the title to the property and to the storage tickets to the person to whom they are delivered. This is a statutory provision in our state. Rev. Codes 1905, § 2266 [3142, Comp. Laws 1913]. It is therefore beyond dispute that the defendants became the absolute owners of the storage tickets and of the wheat represented thereby. . . . We think that the defendants were in the constructive possession of the wheat after the storage tickets were turned over to them, and this is sufficient to sustain a sale with implied warranty of title that it is free from encumbrance." The above reasoning applies to the case at bar and supports the finding of the trial court that the defendant, for all the purposes of this litigation, received the flax and converted the same to his own use, and it follows that the plaintiff is entitled to judgment for the one half of the same. Appellant asks us, in effect, to overrule the last quoted case (St. Anthony & D. Elevator Co. v. Dawson), because, as he alleges, § 3142, Comp. Laws 1913, does not apply to elevator and other grain storage companies.

We, however, consider the case sound in principle regardless of the statute, and will follow its ruling. The judgment is affirmed.

### On Petition for Rehearing.

Appellant has filed a petition for rehearing in which he strenuously contends that this court should follow Plano Mfg. Co. v. Jones, 8 N. D. 315, 79 N. W. 338, rather than St. Anthony & D. Elevator Co. v. Dawson, 20 N. D. 18, 126 N. W. 1013, Ann. Cas. 1912B, 1337. We must decline to do so but will set forth our reasons, which in the interests of brevity we had omitted from the original opinion.

From the very earliest time there had been a dispute as to whether a person who delivered grain to a public warehouseman and took therefor a storage receipt had parted with his title to the grain. This dispute arose naturally from the difficulty of identifying the grain so

stored. Some authorities held such a transaction to be a sale because, as they say, the identical grain cannot be returned. Other authorities held the deposit to be merely a bailment and the fact that the identical grain cannot be returned is immaterial in view of the fact that a like amount of the same kind and grade answers every requirement of the return.

Those courts which held that the depositor had parted with his grain, of necessity held that no action could be maintained for its conversion. This for the very good reason that a man who has no wheat cannot maintain an action against somebody else for converting it. It might be said in passing that those decisions were made in the absence of statute upon the subject. In North Dakota by § 8, chap. 126, Sess. Laws 1891 it was provided: "Whenever any grain shall be delivered to any person, association, firm, corporation or trust, doing a grain, warehouse or grain elevator business in this state, and the receipts issued therefor, providing for the delivery of a like amount and grade to the holder thereof in return, *such delivery shall be a bailment, and not a sale of the grain so delivered.*" After the enactment of this statute the question was not an open one in North Dakota. Notwithstanding this fact, in 1899 the case of Plano Mfg. Co. v. Jones, supra, was decided upon the theory that such delivery was a sale. We have examined the briefs filed in that case and find that said statute was not called to the attention of the court at that time and was, undoubtedly, entirely overlooked. When the case of St. Anthony & D. Elevator Co. v. Dawson, 20 N. D. 18, 126 N. W. 1013, Ann. Cas. 1912B, 1337, was decided, the correct rule was adopted; although that case did not in so many words overrule Plano Mfg. Co. v. Jones, it did so by necessary implication.

As authority for our position, we refer to a note in 94 Am. St. Rep. 220, from which we quote: "By far the most important transactions coming under the head of bailment are those which have to do with the deposit of grain in warehouses. It needs no authority to support the statement that when wheat is delivered at a warehouse to be stored, and the identical wheat is to be returned, the transaction is a bailment. The difficulty arises when it is mingled with other wheat. In this connection, there are two lines of decisions, one holding it a mere bailment and the other a contract of sale. . . . [Case cited and digested.]

This the court held to be a contract of bailment, and it has been so held by numerous other authorities. [Cases cited.] In such cases, the relation existing between the depositors is that of tenants in common of the mass, each being entitled to so much thereof as his share bears to the whole amount; and the fact that the identity of the mass is continually shifting, by being added to and taken from, does not alter it. [Cases cited.] The reasons for this rule were thus well stated in Rice v. Nixon, 97 Ind. 97, 49 Am. Rep. 430: 'The rule which we accept as the true one is required by the commercial interests of the country, and is in harmony with the cardinal principle that the intention of contracting parties is always to be given effect. It is not unknown to us, nor can it be unknown to any court, for it is a matter of great public notoriety and concern, that a vast part of the grain business of the country is conducted through the medium of elevators and warehouses, and it cannot be presumed that warehousemen in receiving grain for storage, or depositors in intrusting it to them for that purpose, intended or expected that each lot, whether of many thousand bushels, or of a few hundred, should be placed in separate receptacles; on the contrary, the course of business in this great branch of commerce, made known to us as a matter of public knowledge and by the decisions of the courts of the land, leads to the presumption that both the warehouseman and the depositor intended that the grain should be placed in a common receptacle and treated as common property. This rule secures to the depositor all that in justice he can ask, namely, that his grain shall be ready for him in kind and quantity whenever he demands it. Any other rule would impede the free course of commerce and render it practically impossible to handle our immense crops. It is reasonable to presume that the warehouseman and his depositor did not intend that the course of business should be interrupted, and that they did not intend that the almost impossible thing of keeping each lot, small or great, apart from the common mass, should be done by the warehouseman. If the warehouseman is not bound to place grain in a separate place for each depositor, then the fact that he puts it in a common receptacle with grain of his own and that of other depositors does not make him a purchaser, and if he is not a purchaser, then he is a bailee. In all matters of contract the intention of the parties gives character and effect to the transaction, and in such

a case as this the circumstances declare that the intention was to make a contract of bailment and not a contract of sale.' [Cases cited and digested.] The other view holding that where grain has been mingled with that of others, whether with the depositor's consent or by custom, and an equal amount of like grain is to be returned, it is a sale, is also supported by eminent authority. [Cases cited.]"

It might further be said that any one interested can obtain possession of an ordinary storage receipt issued under § 3112, Comp. Laws 1913, and will see that such storage receipt does not obligate the warehouseman to purchase the grain nor to pay any sum therefor. True, warehousemen will usually purchase such grain, but the storage ticket does not obligate them to do so. As the St. Anthony & D. Elevator Co. v. Dawson Case is sound in principle, we follow it. The petition for rehearing is denied.