[File No. 6150.]

AGRICULTÙRAL BOND & CREDIT CORPORATION, a Corporation, Respondent, v. COURTENAY FARMERS CO-OPERATIVE ASSOCIATION, a Corporation, Atlantic Elevator Company, a Corporation, S. M. Posey, Oliver Farm Equipment Sales Company, a Corporation, Carl Engle, W. W. West, sole trade, Doing Business under the Name and Style of West Motor Sales, Matt Burkhard, Earl Sargent, Jacob Undem, Carl Borg, Clemens Leder, Respondents, and

UNION CENTRAL LIFE INSURANCE COMPANY, a Corporation, and Larson Oil Company, a Corporation, Appellants.

(251 N. W. 881.)

Opinion filed November 24, 1933.   On rehearing December 28, 1933.

*Herbert G. Nilles,* for Union Central Life Insurance Company, appellant.

*M. W. Duffy,* for Larson Oil Company, appellant.

*Knauf & Knauf,* for respondent.

*Coffey & Strutz,* for Courtenay Farmers Co-operative Association and Atlantic Elevator Company, respondents.

*H. G. Nilles,* for S. M. Posey and Oliver Farm Equipment Company, respondents.

*C. J. Vogel,* for Carl Engle, respondent.

*Ritchie & Ployhar,* for West Motor Sales, respondent.

*Buck & Buck* and *A. P. Paulson,* for Matt Burkhard, Earl Sargent, Jacob Undem, Carl Borg, and Clemens Leder, respondents.

BURKE, J. In this action there was a rehearing and after a careful and thorough re-examination of the record, this decision is rendered.

On the 25th day of September, 1929, the defendant, S. M. Posey, entered into a written contract with Carl Engle, Ben Engle and John Doyle, the Engles and Doyle, agreeing to farm, during the farming season of 1930, commencing September 25, 1929 and ending November 1, 1930, all of sections 33 and 28, the northwest quarter of section 34 and the west half of section 27, all in township 145, range 62, in Foster county, North Dakota, said Posey to furnish all seed and pay one half of the threshing bill, and Carl Engle, Ben Engle and John Doyle to furnish all twine and all proper and convenient tools, teams, utensils, farm implements and machinery and to deliver Posey's one half of the crops in the granary on farm free of charge, or haul direct to the elevator from the machine.

Crops of flax, wheat and barley were raised upon the said land during the farming season of 1930 and the grain so raised was stored in the Courtenay Farmers Co-operative Association and the Atlantic Elevator Company, both in Courtenay, North Dakota. The storage tickets were, by order of the court, deposited with the clerk of court.

There are claims against said grain as follows:

Mortgage to D. F. Cassidy on one half of crops grown during the year 1930 on the west half of section 27, northwest quarter of section 34 and southeast quarter of section 28, to secure the payment of one note for $711.30, due September 1, 1930, interest at 8%; one note for $1,000.00, due October 1, 1930, interest at 8%; one note for $711.30, due September 1, 1931, interest at 8%; one note for $1,000.00, due October 1, 1931, interest at 8%; which mortgage was duly assigned to the defendant, Oliver Equipment Company and was duly filed and recorded on the 9th day of October, 1929;

The Union Central Life Insurance Company claims under an assignment dated April 9, 1930, assigning Posey's interest in the farm contract, for advances in the sum of $1337.16; and additional advances of $99.92 for gas and oil furnished and used in combine threshing and the further sum of $800.00 for farm supplies in connection with the

farming operations. Mortgage on crops grown in 1930 on sections 28, 33, west half of section 27 and northwest quarter of section 34, to secure note for $800.00, interest at 8%, filed April 16, 1930; seed lien filed by Union Central Life Insurance Company for $691.13 for flax furnished and sown on west half of section 27; the $800.00 item is also claimed by the Larson Oil Company;

Seed lien for $600.00 for seed wheat filed by the Courtenay Farmers Co-operative Association June 12, 1930 and a further claim of $181.35, advances for gas and oil used in combine threshing;

Labor lien for $210.00, filed August 7, 1930 against the crops on all the land, by Matt Burkhard;

Farm labor lien, filed September 29, 1930 by Earl Sargent for $166.00 against crops grown on west half of section 27, all of sections 28 and 33, and northwest quarter of section 34, $75.00 of which was earned in threshing the grain;

Farm labor lien filed October 15, 1930 by Clemens Leder, against all of sections 33 and 28 and northwest quarter of section 34, for $75.00 earned threshing the grain;

Farm labor lien filed October 25, 1930 by Carl Borg for $24.50 against west half of section 27 and northwest quarter of section 34;

Jacob Undem filed farm laborer's lien November 1, 1930 for the sum of $301.25, $220.00 of which was earned threshing said grain, against the northwest quarter of section 34, west half of section 27 and all of sections 28 and 33;

Chattel mortgage filed April 16, 1930 by Larson Oil Company on all the crops grown on all of the land to secure the payment of $800.00; the $800.00 mentioned in the Union Central Life Insurance Company's claim; the defendant, Posey, waived his interest in the crop in favor of the Larson Oil Company;

On July 31, 1930, Carl Engle purchased from the West Motor Sales two combines for the total time price of $3,340.00;

On July 25, 1930, Carl Engle agreed in writing to pay the said West Motor Sales the sum of $1670.00 for each machine and to assign his portion of the threshing bill to apply on the purchase price, the intent of the writing being to establish a threshers' lien on the crops, 800 acres of wheat in sections 28, 34, 33; all barley on 320 acres in section 28; all flax on 510 acres in sections 27 and 33;

S. M. Posey executed a similar contract, which was filed for record the fourth day of September, 1930.

The trial court made its findings of fact and conclusions of law and from the judgment duly entered thereon the defendants join in an appeal from the judgment and demand a trial de novo in this court.

Appellants claim that the threshers' lien is invalid for the reason that it was not filed within twenty days from the time the threshing was completed. Nearly all the grain was hauled to the elevator from the machine at the time of threshing, or very soon thereafter, and no grain was delivered to the elevator after the 1st day of October, except some wheat, which the evidence shows was threshed in September and 56 bushels of flax, threshed on section 34 on the 23rd day of October. In the threshers' lien the statement is 68 bushels from 18 acres in section 34, but the court found that 56 bushels of stored flax was grown on section 34.

The theory of the plaintiff is that the threshers' lien was executed in accordance with the contracts made with the defendants, Carl Engle and S. M. Posey, exhibits 19 and 20, by the terms of which each agreed to pay one dollar per acre on 800 acres of wheat in Foster county on sections 28, 34, 33; 320 acres of barley in Foster county on sections 28, 34; 510 acres of flax in Foster county on sections 27 and 32. Each contract provides as follows: "It is specifically understood that the purpose of this agreement is to protect the West Motor Sales and establish a labor lien or a threshers' lien on all crops planted or harvested on land as above described and this lien is to act as a prior lien to any lien heretofore given by me." In these contracts there is no provision for giving a lien on any flax sown in section 34 and it is the contention of appellants first: that since Posey and Carl Engle did not agree to give a lien for threshing flax in section 34 that more than twenty days had expired after the threshing of the grain upon which they did agree to give a lien and before the lien was filed; that the contract of Engle and Posey to thresh was completed in September and the lien, not being filed within twenty days after the completion of the contract for threshing, was invalid; that the combining of some of the green frozen flax on section 34, after the expiration of the time for filing a lien, was an attempt to revive and extend the time in which a threshers' lien may be

filed. . Second, appellants claim that the lien statement was not verified by oath. The evidence relating to the threshers' lien is very unsatisfactory. The record shows that no grain was cut and threshed in October except 56 bushels and 14 pounds of flax claimed to be cut upon section 34 on the 23rd day of October, 1930. There is in the files a purported copy of a storage receipt from the Atlantic Elevator Company stating that on October 23, 1930 the elevator received 56 bushels, 14 pounds of flax. On the margin are the figures "34" and "exhibit 18 HR." On pages 38 and 39 of the transcript the storage tickets, exhibits 5 to 15, are identified, offered and received in evidence. Exhibits 16, 17 and 18, purported copies of storage receipts in the Atlantic Elevator Company, are marked and identified but not offered in evidence. On page 105 of the transcript, exhibits 16, 17 and 18, are again identified and testimony is given in relation thereto but the exhibits are not offered or received in evidence. The contracts, exhibits 19 and 20, were executed on the 25th day of July, 1930. At that time of the year, the evidence shows, they could not tell whether there was going to be any flax on section 34 or not. In fact, the evidence shows that they could not tell on the 1st day of October, 1930, whether there would be any flax on section 34. There was flax and wheat sown on section 34 and Engle and Posey agreed to give a threshers' lien on all the wheat on 34, but for some reason the contract did not contain a provision to give a lien on flax on 34. The combining of the grain upon which Posey and Engle agreed to give a threshers' lien was completed before the end of September 1930 and if the defendant Engle had not cut and threshed the 56 bushels of flax on the 23rd of October it is clear that a lien could not be filed, as more than twenty days had elapsed after the cutting and threshing of the other grain. The testimony shows that the 56 bushels of flax were green and frozen and of such a poor quality that it could not be mixed with other flax in the elevator. About the time the flax was cut on section 34 Thomas Lyons, the collecting agent of the plaintiff company, appeared on the scene with the contracts for a lien. He helped measure the land upon which the threshed grain grew. He prepared a threshers' lien, taking the figures from the record of the elevators. He brought the lien to

Valley City for Carl Engle to execute. Carl Engle testified in relation to the threshers' lien, that was signed in Valley City in the Bank.

"Mr. Lyons was present. I don't know of anybody else. . . . I read a little of it over, and I signed it and that is what I done. . . . The notary public took it. . . . He stamped and sealed it. . . .

Q. Now, Mr. Engle, didn't you tell me in my office on or about the 10th day of March last, that you didn't take an oath and didn't raise your hand? A. The same as I am telling now. I did not know. I don't know today for sure. . . .

Q. Calling your attention to exhibit M, I will ask you to state whether or not that is an affidavit you made in my office? A. I guess it is. I guess I did. . . .

Q. Don't you remember reading that over and signing it? A. I told you the same there as I did here, that I couldn't swear to it. I know I signed the lien. . . . But just like I told you, that I couldn't swear to it that it was true. . . . Like I said, I didn't raise my right hand. I told you down there I don't know no more than I do now. . . . I read this affidavit (exhibit M) over before I signed it."

The affidavit, exhibit M, was made by Carl Engle on the 16th day of March, 1931. In this affidavit Engle states "That on or about the 3rd day of November, 1930, Mr. Lyons, who I think represented the Agricultural Bond and Credit Corporation, called me up and had me come into Valley City. When I got there he had a paper there which he said was a lien that he wanted to get filed and he asked me to sign it. I did not read the paper and signed it where he told me to sign it. He told me it was a threshing lien and he wanted to take it to Carrington to get it filed. I met Mr. Lyons in the hotel and he said he wanted me to go over to the bank to a Notary Public to get the papers fixed up. We went over to the counter and I signed the paper and I suppose the Notary Public signed it too. I did not swear to the truth of the paper and I did not take any oath. I remember that I did not raise my right hand or do anything at that time except simply to sign where they wanted me to sign. I did not understand that this was going to be a lien on my own grain and I did not understand that I was assigning this lien to the Agricultural Credit and Bond Corporation. I did not understand that this was going to be a lien on my own grain and if I

had known that anybody was going to claim a threshers' lien on my crop I would not have signed it at all."

Mr. Nilles testified that he had a conversation in his office with Engle in March, 1931. "I asked him as to whether or not he signed the threshers' lien which was filed in Foster county on the Posey grain, and he said he signed some kind of a paper in the bank in Valley City at the request of Mr. Lyons, and I asked him, if at the time he signed that paper he knew what it was, and he said he thought it was a threshers' lien. I asked him what he did, if he signed it, and he said he signed the paper and they pushed it across the desk or across the counter to a fellow there and that is all he did. I asked him whether or not any oath was administered to him, whether he was asked to swear to what he said, to the truth of the statements in the threshers' lien, or whether he raised his right hand, and he said he did not, and that he remembered very well that he did not. . . . I asked him as to whether or not he would be willing to make an affidavit as to the truth of what he had told me and he said he would." Exhibit M is the affidavit he made at that time.

For his separate answer the defendant Carl Engle "denies that any legal or valid threshers' lien was signed, subscribed or sworn to by this answering defendant or that the same was assigned to the plaintiff." The only evidence of proof that Carl Engle swore to the threshers' lien, exhibit 1, is the certificate of the notary public certifying that Engle swore to the truth of the statement of the facts stated herein. This certificate, however, is only prima facie evidence.

In the case of Baumer v. French, 8 N. D. 319, at page 327, 79 N. W. 340, the court said: "At the trial one McMichael was a witness, and testified for the defendant. On his cross-examination a document in the form of an affidavit, purporting to have been subscribed and sworn to by the witness, was shown the witness, and he identified the same as a paper signed by him at the office of the plaintiff's counsel at a date prior to the trial. The witness testified that he signed the instrument, but was not sworn at that time, and that he never in fact swore to the statement in it. This testimony was not contradicted, despite the fact that the plaintiff's counsel who conducted the cross-examination was the notary who affixed the jurat to the affidavit. Under the circum-

stances, therefore, we think that the fact is established, for the purpose of this case, that the document in question is not an affidavit. This court has recently held that the jurat to an affidavit is, as a general rule, only prima facie evidence, and may be rebutted. See Turner v. St. John, 8 N. D. 245, 78 N. W. 340. . . . As has been seen, the instrument is a mere written statement, signed by the witness, and not verified by his oath. Its introduction in evidence was not objected to upon the ground that it did not tend to impeach the witness; but, if this objection had been made, we are of the opinion that it would not have been a valid objection. The statements made by the witness upon his oral examination were material upon the main question in the case, and such statements were in square conflict with those made in the document offered in evidence. This being so, the document was competent evidence, as tending to impeach the witness, and for this purpose alone it must have been offered. It follows that this assignment of error must be overruled."

In the instant case Engle at first testified that he did not know whether he was sworn or not, that he could not remember. It was in direct conflict with the statements he made to Mr. Nilles and the affidavit, exhibit M, which he made at that time, namely, that he did remember distinctly that he was not sworn to the instrument. Then, after being cross-examined as to exhibit M, on page 51 of the transcript, he testified, "I know I signed the lien. . . . But just like I told you, that I couldn't swear to it that it was true." Here he makes the direct statement that he couldn't swear to it that it was true. On the face of the record, how could he swear to the truth of the statement in the threshers' lien. He did not prepare it. It was not taken from any records he kept. It was prepared by Mr. Lyons from records, not made by Mr. Engle or Lyons, but from the records kept in the Courtenay Farmers Co-operative Association and the Atlantic Elevator Company. So far as Engle was concerned, the statement taken from the records in the elevator companies was hearsay and could not be sworn to positively by Engle. His statement on cross-examination on page 51 of the record, namely: "But just like I told you, that I couldn't swear to it that it was true," is not contradicted. The proof of the verification relied on by the plaintiff is found on page 175 of the transcript, namely:

"And you were present when Mr. Carl Engle signed exhibit 1?
A. Yes.

Q. Whether or not the notary asked him if he swore to the statements therein contained? A. He did."

This evidence at best is only proof that the notary asked Engle if he swore to the statement and does not prove that Engle did swear to it. For some reason the witness was not asked if Engle swore to the statement and no witness testified that he did swear to it. It is apparent from this record that Engle did not intend to file a lien; that he let the time go by for filing a lien and that whatever he did in relation thereto was done at the special instance and request of Mr. Lyons, the collecting agent of the plaintiff. From all the circumstances there is a strong inference that the threshing was completed in September and the threshing of the green, frozen flax on section 34 was only for the purpose of extending the time for filing a lien. But we need not pass upon this question, as it clearly appears that Engle could not, and did not, swear to the statement in the threshers' lien.

Section 6855 of the Supplement to the Compiled Laws of North Dakota for 1913, as amended by chapter 156 of the Sessions Laws of 1929, reads as follows: "Any person entitled to a lien under this chapter shall within twenty days after the threshing is completed, file in the office of the register of deeds of the County of which the grain was grown a statement in writing, verified by oath, showing the kind and quantity of grain threshed, the price agreed upon for threshing the same, either by threshing machines or by combines, either by the acre, the bushel, the hour, or the day; or if no price has been agreed upon, then the reasonable value, the name of the person for whom the threshing was done and a description of the land upon which the grain was grown. Unless the person entitled to the lien shall file such statement within the time aforesaid he shall be deemed to have waived his right thereto."

In the case of Kelley v. Flint, 251 Mich. 691, 232 N. W. 407, page 408, the court said: "The term 'verified,' as applied to such claims, has, we think, a settled meaning, and refers to an affidavit attached thereto as to the truth of the matters therein set forth within the personal knowledge of the affiant. See 'Verification,' Words and Phrases, First and Second Editions. 'A purported affidavit, on which perjury

could not be assigned if it was wilfully false, would not, in law, be an affidavit at all.' Clarke v. Wayne Circuit Judge, 193 Mich. 33, 159 N. W. 387. In passing upon a similar question in Griswold v. Ludington, 116 Mich. 401, 411, 74 N. W. 663, 667, (the) court said: 'It is the evident intent of the legislature by these sections of the charter to compel all parties having claims against a city to make a statement of the claim under oath, . . . and until this is done no action can be commenced or maintained.' "

"The verification contemplated by W. Va. Code 1906, chap. 130, § 31, relating to the verifying of mechanics' liens, is an oath or affirmation taken and administered by and before an officer having authority by law to administer and certify oaths and affirmations." Tygart Valley Brewing Co. v. Vilter Mfg. Co. (C. C. A. 4th) 184 F. 845.

"The primary meaning of verification in a legal sense is to affirm under oath, and Acts of 1905, page 182, chap. 109, § 5, requiring a firm doing a banking business to make reports to the auditor of the State verified by some member of the firm, calls for reports under oath." State v. Trook, 172 Ind. 558, 88 N. E. 930.

"Verification means to confirm and substantiate by oath." Marshall v. State, 116 Neb. 45, 215 N. W. 564.

In Carlisle v. Gunn, 68 Miss. 243, 8 So. 743, an agent went to a justice of the peace and asked that papers be prepared for issuance of an attachment for his principal, and the justice of the peace, after making them out according to the facts given him by the agent, handed them to the agent, asking "If that was what he wanted; if it was all right," to which the agent replied, "Yes," it was held that no oath had been administered, although the agent testified that he considered that what was done amounted to swearing to the affidavit. To the same effect is the case of Pearre Bros. v. Folb, 123 N. C. 239, 31 S. E. 475; State v. Davis, 69 N. C. 383, the court said: "This 'solemnity' applies not only to the substance of the oath, but to the form and manner of taking, and of administering it."

The statute requires the statement in the threshers' lien to be verified by oath. It does not simply say "must be verified," but says specifically that "it must be verified by oath." That is, an oath must be administered by some official having authority to administer an oath

and there must be an affirmative response or some act on the part of the party to whom the oath is administered indicating that he knows he is taking an oath.

The jurat is no part of the affidavit, but simply evidence that the oath was made and may be shown to be false. If shown to be false, the instrument is not an affidavit. Turner v. St. John, 8 N. D. 260, 261, 78 N. W. 340. The prima facie showing established by the jurat is disproved by direct testimony and other facts and circumstances and the purported threshers' lien is invalid.

The seed lien of the Courtenay Farmers Co-operative Association is challenged by the appellants on several grounds, the most serious of which is that the statement contained therein was not sworn to as required by law. The law regulating the proceedings to obtain a lien, in force at the time, is § 6852, Compiled Laws 1913, and reads as follows: "Any person entitled to a lien under this chapter shall within thirty days after the seed is furnished file in the office of the register of deeds of the county in which the seed is to be sown or planted a statement in writing, verified by oath, showing the kind and quantity of seed, its value, the name of the person to whom furnished and a description of the land upon which the same is to be or has been planted or sown. Unless the person entitled to the lien shall be deemed to have waived his right thereto."

In the case of Huether v. McCaull-Dinsmore Co. 52 N. D. 721, at page 732, 204 N. W. 614, the court said: "This court has several times held that a seed lien is wholly statutory in its nature and origin and, hence, can not be acquired or enforced unless there is substantial compliance with the statute." Lavin v. Bradley, 1 N. D. 291, 47 N. W. 384; Parker v. First Nat. Bank, 3 N. D. 87, 54 N. W. 313; Chaffee v. Edinger, 29 N. D. 537, 151 N. W. 223.

In the instant case the seed lien challenged reads as follows: "Courtenay Farmers Co-operative Association being duly sworn say that on the 20th day of March, A. D. 1930, he furnished to S. M. Posey," then follows a statement of the number of bushels furnished and a description of the land upon which the seed was to be sown and its value, signed "Courtenay Farmers Co-operative Association, by Robert Turner, manager. Subscribed and sworn to before me this 7th day of June, A. D. 1930." This affidavit purports to be the affidavit of the Courtenay

Farmers Co-operative Association. It does not state that it is a corporation, a partnership or trade name, but it is conceded that it is a corporation. It does not state that Robert Turner was sworn and made the affidavit on behalf of the corporation, but it does state that "The Courtenay Farmers Co-operative Association being duly sworn, says," etc.

In the case of F. A. Patrick & Co. v. Austin, 20 N. D. 261, 127 N. W. 109, an affidavit was held good that was signed "F. A. Patrick & Co., By George C. Stone. Subscribed and sworn to before me." That affidavit shows on its face that George C. Stone did in fact make the affidavit which reads "Geo. C. Stone, Treas. of F. A. Patrick & Co., a corporation of the city of Duluth, being duly sworn, doth say," then follows a description of the claim. To the same effect is Silver Peak Mines v. Hanchett (C. C.) 80 F. 990.

In the case of A. P. Hotaling & Co. v. Brogan, 12 Cal. App. 500, 107 P. 711, the affidavit reads " 'R. M. Hotaling of the plaintiff corporation in the action above named, being duly sworn, deposes and says: (Then follows a statement of the indebtedness of plaintiff and other facts required by the statute); and this deponent further says (then follows still further facts required to be stated); that affiant is the duly elected, qualified and acting President of the plaintiff corporation, and makes the affidavit in its behalf. A. P. Hotaling & Co., By R. M. Hotaling, President. Subscribed and sworn to before me this 29th day of March, 1909.' " In this case the affidavit is the same as the affidavit in the case of Patrick & Company v. Austin, supra. But a case very much in point is the case of Blyth & F. Co. v. Swensen Bros., 7 Wyo. 303, 51 P. 873. The affidavit was as follows: " 'Plaintiff in the action above named, being duly sworn, deposes and says:' " etc., and is signed: " 'The Blyth & Fargo Co., By Sherman Fargo, Managing Agent. Subscribed and sworn to before me.' " Like in the instant case the affidavit purported to be signed by the corporation and it is signed and subscribed and sworn to in the same way. The court said: "It is not the affidavit of the plaintiff, for being a company, it cannot take an oath. It is not the affidavit of the agent, for nowhere in the paper is it purported that the agent makes any statement whatever. The language is that 'the plaintiff deposes and says.' " And the lan-

guage in the instant case is "Courtenay Farmers Co-operative Association being duly sworn says."

In the case of Clark v. Smith, 142 Ga. 200, 82 S. E. 563, the court said: "There is no law which authorizes an attorney at law or in fact to execute an affidavit in the name of the owner of the premises, purporting to be made and signed by such owner. One person cannot make an affidavit in the name of another; though he may make it in his own name as an agent or attorney of such other, where the law so authorizes."

In the case of Bank of Dearing v. Howard, 44 Ga. App. 663, 162 S. E. 644, "The pauper's affidavit, as entered in the body of the affidavit, was by the 'Bank of Dearing,' and was signed 'Bank of Dearing' by (a named person describing himself as) Liquidating Agent of the Bank of Dearing, and in charge of the affairs of said 'Bank of Dearing' the affidavit did not show that any individual swore to the truth of the allegations necessary to furnish a basis for the proceeding. . . . While it is true that the signature of the bank to the affidavit discloses the name of the agent by whom the bank's name was signed, the signature as thus entered amounted to nothing more than the signature of the bank itself. Where the bank itself could not take an oath, and the agent himself did not purport to do so, but only purported by his own signature to indicate how and in what manner the bank itself sought to affix its signature, there was no personal signature such as would subject the signer to punishment for the offense of false swearing if the averments as made had been proved untrue."

The words "by," "per," "pro," used to a signature and adding a description thereto, such as "cashier," "secretary," "president," or "agent," sufficiently indicates and shows that such person signed an official name alone and not personally. The use of the words "by," "per," or "pro" does not necessarily add to the certainty of what is thus expressed, and it is common to use these words in commercial business, it being sufficiently understood that the paper is signed by the officer or agent named and for the corporation. Liebscher v. Kraus, 74 Wis. 387, 43 N. W. 166, 167, 5 L.R.A. 496, 17 Am. St. Rep. 171; Words & Phrases, 1st ed. 929.

In the instant case the verification was not made by Robert Turner personally, but as manager for the corporation, and being insufficient

under the statute, the seed lien of the Courtenay Farmers Co-operative Association is invalid.

The claim is made that only the claims of the parties appealing can be considered by the court on this appeal. The notice of appeal was served on all of the parties, or their attorneys. The action is in equity to foreclose liens, and since a trial de novo of all questions of law and fact is demanded, in the notice of appeal, the appellate court has jurisdiction to determine the rights of all the parties.

The liens established in the order of their priority are as follows:

On October 30, 1930, the Courtenay Farmers Co-operative Association and the Atlantic Elevator Company, in which all of the grain involved was stored, applied to the district court for an order to deposit the storage receipts in court, under § 7593, Compiled Laws, 1913, and on an order duly made the storage tickets, issued by the said elevator companies, were duly deposited in the office of the clerk of the district court, in which the action was pending, and further ordered that none of the grain be sold until the further order of the court, thus making the storage of the grain from the date of said order a part of the costs of said action and a first lien upon the said grain for the payment of the storage of the grain from and after the date of said order until the legal sale of the said grain, together with interest thereon at the rate of 6%.

The Courtenay Farmers Co-operative Association, at the special instance and request of Carl Engle, advanced and furnished oil and gas to operate the combine harvesting and threshing machines in the sum of $181.35, upon the storage tickets for grain, number 1047 for $100.00; number 1207 for $31.35; number 1808 for $50.00.

The claim of seed lien of the Union Central Life Insurance Company on the flax raised on section 27–145–62 for $691.13 and interest from and after April 19, 1930, at 6%.

Claim of Matt Burkhard, claiming a lien on all of the grain raised on sections 28, 33, west half of section 27 and the northwest quarter of section 34, all in township 145, range 62, to secure the payment of $210.00 for work and labor from the first day of April, 1930, until the 17th day of July, 1930, as shown by the statement of lien, exhibit A, with interest at 6% from August 7, 1930.

Claim of Earl Sargent for a lien on the grain raised on section 27,

section 28, section 33 and northwest quarter of section 34, township 145, range 62, to secure the payment of $166.00 for work and labor on said described land as shown by the statement of lien, exhibit F, with interest at 6% from September 29, 1930.

Claim of Jacob Undem for lien on the northwest quarter of 34, the west half of section 27, all of section 28 and all of section 33, township 145, range 62, to secure the payment of $301.25 for work and labor on said land in the raising of crops thereon as shown by his statement, exhibit E, with interest from November 1, 1930, at 6%.

Claim of Carl Borg for a lien on the west half of section 27 and northwest quarter of section 34–145–62, to secure the payment of $24.50 for work and labor on said land during the crop season, as shown by exhibit G, with interest from October 25, 1930, at 6%.

Claim of Clemens Leder for lien on all the crop raised on section 33, section 28 and west half of section 27 and northwest quarter of section 34, township 145, range 62, Foster county, North Dakota, to secure the payment of $75.00 according to the statement in the lien, exhibit D, duly filed, with interest thereon from October 15, 1930, at 6%.

These liens, for work and labor, are all in the same class and none of them have any priority over any of the other labor liens in the matter of payment.

Objection is made to the labor liens upon the ground that none of the laborers, who filed the liens, testified at the trial. There is no merit in this contention, as Carl Engle testified that each of the individuals who filed labor liens did the work and labor claimed in the labor liens and no payment had ever been made upon any of the claims.

The claim is also made that the labor liens, with the exception of the labor lien of Matt Burkhard, are invalid because all the grain was removed from Foster county before filing the liens. As the grain was threshed it was hauled to the elevators at Courtenay, Courtenay being the market nearest to the land upon which the grain was grown. The storage receipts for the grain were retained by the elevator companies and on the 29th of October, 1930, J. A. Coffey, as attorney for the elevator companies, made affidavits stating that he had in his possession, as attorney for the elevator companies, the storage receipts for all of the grain raised upon the said lands and stored in the Courtenay Farmers Co-operative Association and the Atlantic Elevator Company.

In the affidavits he describes the storage receipts by number, stating the amount and quality of the grain described in each and specifying and naming the lien holders, including the holders of labor liens, upon which affidavits the court made its order directing that the storage tickets described in the affidavits be delivered over and deposited with the clerk of district court and ordering that none of said grain be sold and paid for to any of the creditors until the further order of the court.

Appellants rely upon the case of Richmire v. Andrews & G. Elevator Co. 11 N. D. 453, 92 N. W. 819. In that case the grain was hauled to the elevator and shipped out of the country and sold before the lien was filed. The court held that the lien did not attach until it was filed, and as the grain had all been sold and shipped out of the state before the filing of the lien there was no lien.

In the case of Wonser v. Walden Farmers Elevator Co. 31 N. D. at page 391, 153 N. W. 1015, this court said: "In the case at bar the evidence shows that the defendant received the grain at its elevator, and merely issued slips showing the amount of flax in the different loads. The slips were produced and offered in evidence and they were not storage receipts in any sense of the word; but as already stated, are merely slips of paper showing the weights of the various loads delivered. . . . The delivery of the flax to the defendant's elevator must be deemed a bailment, and not a sale. Dammann v. Schibsby Implement Co. 30 N. D. 15, 151 N. W. 985; Gordon v. Freeman, 112 Minn. 482, 128 N. W. 834, 1118."

In the instant case the grain was placed in the elevator by the tenants and Mr. Posey. There was no settlement with anyone. The storage receipts were not delivered, but were retained by the elevator companies and deposited in court for the satisfaction of any claims which might be established in this action, and there is no merit in the contention that the placing of the grain in the elevators in such circumstances invalidates the liens.

In April, 1930, S. M. Posey assigned to the defendant, the Union Central Life Insurance Company, his interest under the crop contract in crops raised on the north half of section 28 and the west half of section 27, and on October 27, 1930, he assigned all his interest in such contract to the Union Central Life Insurance Company and in addition to the $691.13 for seed flax secured by seed lien, the Union

Central Life Insurance Company made advances of $1,337.16, but which lien was waived by S. M. Posey prior to the assignment of the contract to the Union Central Life Insurance Company, the waiver being in favor of the Larson Oil Company's crop mortgage for the sum of $800.00 for advances for gasoline and oil furnished to the tenants for the spring work that year and thus making the Larson claim for $800.00 prior to the claim of the Union Central Life Insurance Company for $1,337.16 for advances.

The lien of the Union Central Life Insurance Company and the Larson Oil Company is subject to the lien of the chattel mortgage of the Oliver Equipment Company for $1,711.30, interest at 8%, on the one half of the crop on section 27, northwest quarter of section 34 and southeast quarter of section 28, all in 145–62. That is, the mortgage is only on one half of the crop, the tenants' share, and given by the tenants on their share. The Oliver mortgage is subject to an advance of $50.00 made by the Courtenay Farmers Co-operative Association at the request of the Oliver Farm Equipment Company.

There should also be credited on claims of the Union Central Life Insurance Company $224.45 for 164 bushels of flax received, the same having been delivered to the Union Central Life Insurance Company and being a part of the crop raised upon said lands in 1930. The claims herein established are liens upon all of the grain grown upon the said lands during the year and the lien holders are entitled to judgment against S. M. Posey, Carl Engle, Ben Engle and John Doyle for the amount of their claims and for a foreclosure of their liens and a sale of all the grain on deposit raised upon said land during said farming season and for costs.

It is ordered that judgment be entered accordingly.

BURR, Ch. J., and NUESSLE and CHRISTIANSON, JJ., concur.

MOELLRING, J., not participating.

### On Petition for Rehearing.

BURKE, J. The Larson Oil Company filed a petition for rehearing objecting to the storage charges made a first lien on the grain from the

date of the order authorizing the deposit of the storage receipts with the clerk of the court until the legal sale of said grain.

It is true that some statement was made in the oral argument that the grain had been sold and disposed of, but that is no part of the record, and whether there was a sale and a conversion of the grain by the elevator companies the court has not attempted to decide and does not decide, but we hold that there was a legal deposit of the warehouse receipts with the clerk of court. The affidavits for each deposit describes and names the different lien holders, the amount of the liens and the kind of grain and the number of bushels covered by each warehouse receipt and the affidavits and the orders for deposit are filed in the case and are a part of the judgment roll.

It was also stated in the oral argument, by the attorneys for the elevator companies, that they only "claimed storage during the time the grain was on deposit, after the deposit was made in court," and that, as a matter of course, is all the elevator companies would be entitled to and this they are entitled to on the record as made.

The petitioner again reiterates that there is no proof of the execution of the farm labor liens other than the instruments themselves. Carl Engle, without objection, testified as to the work performed by each claimant of labor liens. For example:

"Q. I think you have already stated that Clemens Leder performed work for 15 days? A. Yes.

"Q. Five dollars per day? A. Yes.

"Q. That work was done on the Posey farm? A. Yes.

"Q. In the combining? A. Yes.

"Q. You say you haven't paid any of that? A. No.

"Q. You still owe it? A. Yes.

"Q. That was done in the fall of 1930? A. Yes.

"Q. You also stated that Earl Sargent did some work for you. He claims he started on the 14th of April. A. I guess that is about right.

"Q. Worked until Sept. 10th, 1930, and that he earned $176.00. Is that the amount due? A. That is right.

"Q. Anything been paid? A. No.

"Q. He asked for the pay, did he? A. Yes.

"Q. Did you tell him to file a lien? A. Yes.

"Q. You also stated Jake Undem did some work. He claims he started the 5th of April and worked by the month at the rate of $75.00 per month until June 15th. A. Yes, that is correct.

"Q. And that he afterwards worked from June 15th to October 24th off and on, at $5.00 per day, and he claims he earned $302.25. A. That is right.

"Q. That was agreed upon between you, was it? A. Yes.

"Q. He also filed a lien at your request? A. Yes.

"Q. Any part of that been paid? A. No.

"Q. Part of the work was done in combining? A. Yes.

"Q. Part was in putting in the crops on the Posey farm? A. Yes.

"Q. He worked on all of this land, did he, more or less? A. Yes."

And continuing he testifies as to each of the claims for farm labor liens and that he could not pay for the labor because of the many other liens against the grain. The certificate of the officer before whom the liens were sworn to is evidence that the statements were made and sworn to and the uncontradicted testimony of Carl Engle supplies the necessary proof to establish the liens.

Petitioner further claims, that in holding that the lien of the Union Central Life Insurance Company and the Larson Oil Company is subject to the lien of the chattel mortgage of the Oliver Equipment Company, the court did not take into consideration that the liens filed for labor were for labor that the tenants were, under their farm contract, obligated to perform and therefore they should be deducted from the tenants' share of the crop and there is merit to this contention.

The Oliver Equipment Company's mortgage is prior in point of time and filing in the office of the register of deeds, but it only covers the interest of the tenants in the crop and according to the terms of the farm contract the tenants were obligated to do this very work for which the labor liens were filed, excepting those liens which included work in combining and for the combining they were obligated to pay for half of the combining.

The total amount of the labor liens is $776.00; of this amount $370.00 was earned in combining, leaving $406.00, exclusive of combining, to which should be added $185.00, the tenants' share for labor

earned in combining, amounting to $591.00. After deducting the sum of $591.00 from the tenants' share of the crop, the Oliver Equipment Company's mortgage is prior on the remaining portion of the tenants' share of the crop. As a matter of course the Larson Oil Company has a first lien on the landlord's share, but subject to the seed liens of the Union Central Life Insurance Company on the flax.

The plaintiff also filed a petition for rehearing, but the matter therein has been fully considered and decided and a rehearing is denied.

BURR, Ch. J., and NUESSLE and CHRISTIANSON, JJ., concur.